## MARTIN H. ZABRISKIE v. STATE.

1. Under a statute making it indictable to seduce a female of good repute for chastity, under promise of marriage, the state must prove her good repute affirmatively, it will not be presumed.
2. The statute requiring the female to be corroborated to the extent required in an indictment for perjury, the corroborating circumstance relied upon for conviction must be something inconsistent with the truth of the defendant's denial. Courtship, unless of such a character that the jury might infer from it a promise of marriage, is not corroborative in a legal sense.
3. After conviction and before judgment in the court below, the Supreme Court has power to award a *certiorari* at the instance of the attorney-general, and bring up the proceedings and pass judgment upon the defendant.

In error to the Supreme Court. For opinion of Supreme Court see *ante p.* 369.

For the plaintiff in error, *J. D. Bedle.*

For the defendant in error, *W. Y. Johnson.*

The opinion of the court was delivered by

VAN SYCKEL, J. The defendant is indicted under the second section of the act of March 30th, 1876, (*Rev., p.* 1295,) which provides:

" That if any single man over the age of eighteen years, under promise of marriage, shall have sexual intercourse with any single female of good repute for chastity, under the age of twenty-one years, and she shall thereby become pregnant, any person so offending shall be deemed guilty of a misdemeanor, and on conviction, shall be punished by fine not exceeding $5000, or by imprisonment at hard labor for a period not exceeding five years, or both; but in such cases,

the evidence of the female must be corroborated to the extent required in case of indictment for perjury."

On the trial of this indictment the defendant was convicted, and errors are assigned on exceptions to the charge of the court to the jury.

The first exception taken by the defendant is, to that part of said charge which charges the jury that the law presumes of every female that she is of good repute for chastity if nothing be said upon the subject by any witness upon the stand, and that the law presumes of any particular female that her repute for chastity is good, and he who would assail that reputation must do it by proof, so that under this branch of the statute the inquiry of the jury is whether the evidence shows that her general reputation for chastity is not good, and if the evidence does not show that, then the presumption of the law that her general reputation for chastity is good, will stand.

The substance of the charge on this point is, that in the absence of all evidence upon the question of repute, the law will presume as a fact that the female is of good repute for chastity, and that the defendant could be convicted without any evidence to establish such reputation.

To warrant a conviction under this statute the following facts must appear:

1. The defendant must be a single man over the age of eighteen.

2. The female must be a single woman.

3. She must be under the age of twenty-one.

4. She must be of good repute for chastity.

5. The sexual intercourse must have been had under a promise of marriage.

6. She must thereby become pregnant.

7. The evidence of the female must be corroborated to the extent required in case of indictment for perjury.

These are essential elements of the offence, the presence of each and all of them is necessary to conviction, and the absence of any one of them is fatal to the case of the state. The

burden rests upon the state to prove the guilt of the accused beyond a reasonable doubt, and therefore each of these facts must be established. The law will not presume that the female is single, nor that she is under twenty-one years of age, nor that she was seduced by promise of marriage, for that would be to reverse the order of things, by assuming the defendant's guilt and compelling him to prove his innocence. Good repute for chastity is a quality which may or may not exist in the prosecutrix ; women are not all chaste ; the statute itself recognizes two classes, those of good repute and those not of good repute. With the former class only can the statutory crime possibly be committed. I cannot conceive how this constituent of the crime can, as a conclusion of law, be presumed to be present as a fact in the case, without overturning two rules which are conceded by every just mind to underlie a humane administration of the criminal law. These rules are :

*First.* That all the facts necessary to constitute the offence charged must be averred and proven by the state.

*Second.* The presumption of the defendant's innocence, which must prevail until his guilt is proven beyond a reasonable doubt.

No one of pure mind will doubt that women, as a class, are chaste, and that the absence of purity of character in the sex is exceptional.

Society and social intercourse between families are organized and based upon this presumption.

Universal experience will attest the truth of the assertion that this confidence in the virtue of woman is not misplaced. So it is believed, as a general rule, that men are law-abiding and truthful, and that their intercourse with each other is characterized by honesty and integrity.

Therefore, when a crime is imputed, the law interposes a shield, by presuming innocence until guilt is proven. If fraud is charged, it must be shown, it will not be presumed. If a woman is charged with an offence which involves her

chastity, she will be presumed to be pure until the contrary is affirmatively established.

"All these presumptions arise in the administration of criminal justice as aids to defence, and not as instruments of assault. They are the shield of the accused, not the sword of the prosecutrix."

Mr. Bishop, in his work on Criminal Procedure, says:

"The defendant in a criminal case has continually present a presumption on his side; namely, the presumption of innocence. Now, the proposition that in this sense the burden of proof must always be on the prosecuting power, results from the familiar maxim thus alluded to, that every man is to be presumed innocent until he is proved guilty. This general statement is sometimes reduced to the minuter form that every material fact necessary to constitute the crime in question must be averred in the indictment and then proved by the prosecuting power." 1 *Bish. Cr. Proc.*, § 1057.

That good repute of the female is a constituent of the crime charged, and that it is an indispensable allegation in the indictment, is not denied. To constitute guilt it is necessary that this good repute should exist; in the absence of it the statutory crime has not been committed. If all the other facts are proved, still the defendant must be adjudged to be innocent, unless the good repute is proven, or unless, in the absence of proof, it is presumed as a fact in the case.

Such presumption, it is manifest, would destroy the presumption of innocence, which is ever present as a protection to the accused, and substitute for it the presumption of guilt.

A woman who comes into court with a bastard child in her arms, is not a representative of her sex; happily she represents a very insignificant portion of it. The fact that she has sacrificed that virtue which was her glittering crown casts such a shadow upon her, that in the most charitable view of the case, it should be left without presumption either way, to be determined by competent evidence what her prior repute has been. Her immoral conduct, unless mitigating circumstances are shown, classes her with the vicious and disreputa-

ble, and, as to her, negatives the presumption of purity so uni-versally accorded to her sex. The question is not whether the vast majority of females are of good repute, but whether in this case it shall be presumed as a fact against the defend-ant that the woman with whom the crime is alleged to have been committed, and who carries with her the evidence of her shame, is of good repute. The rule, if well founded, must be of universal application, and involves the broad proposition that of the entire class of women who bear illegitimate children, it must be presumed that every one who may prefer a charge of this kind is of good repute for chastity. It will be more reasonable to reverse the presumption.

If the prosecutrix was upon trial for an offence which im-peached her prior purity, the law would humanely presume that no infirmity in that respect existed, but when the charac-ter of this defendant, who is equally entitled to the presump-tion of innocence, is assailed, the fact of her good repute to overthrow and destroy that presumption must be affirmatively established by the prosecution.

Good repute for chastity is susceptible of proof in the same way as good reputation for truth or honesty. Testimony of persons from the circle in which she moves that they had never heard her reputation called in question, would be com-petent evidence of the fact.

The good character even of a defendant on trial under in-dictment is not presumed; his innocence is presumed, but not his good character. If his good character were presumed, as a weapon of his defence, then manifestly the state might, in the first instance, offer evidence to impeach the good character upon which the defendant relied. All the books agree that until the defendant offers affirmative evidence of his good character, it is not competent for the state to attack it. *Ros-coe's Cr. Ev.* 98; 1 *Whart. Cr. L.,* § 638; 3 *Greenl. Ev.,* § 25.

On an indictment for larceny, the presumption will not arise that the defendant is of good character for honesty, be-cause the masses of mankind are honest. Such character is, a

fact which the defendant may prove in his exculpation. In the absence of proof, the law indulges in no presumption that his character is either good or bad, and the jury, without regard to that, must base their verdict solely on the evidence adduced.

The question involved here has received judicial consideration in a number of cases.

The earliest one to which my attention has been called is *Crozier* v. *People*, 1 *Park. Cr. R.* 453, where the words used in defining the crime were, "chaste character," instead of "good repute for chastity." The court said, "that in the absence of evidence, chastity is to be presumed—that it comes within the rule that good character will be presumed until the contrary is shown."

It seems to me that no support for this view of the statute can be derived from the rule with respect to good character.

The rule of evidence which requires a jury to accept the testimony of a witness, unless it is inherently improbable, or unless it is discredited by circumstances which appear in the case, or by evidence impeaching the veracity of the witness, cannot be applied to the female in the relation she bears to the statutory offence. It is not a question as to the persuasive force of her testimony, or as to the rules of evidence which govern it, but as to whether a constituent part of the offence imputed to the defendant is present in this case.

She has avowedly participated with the defendant in a violation of the criminal law, and she must be regarded as *in pari delicto*, until those material facts (of which her good repute is one) are shown to exist, which aggravate the character of the *delictum*, and make the defendant alone amenable to the higher statutory crime. To assert that a woman establishes a claim before the law to the presumption of good repute for chastity, when she admits her dereliction, seems contrary to reason and propriety, and places her upon the same plane with those whose lives have been blameless.

The New York cases hold the words "previous chaste character" in the statute of that state, to mean actual personal

virtue, and not reputation, which is the estimate of character formed by the public. There is a distinction between actual personal virtue and " good repute for chastity," as used in our statute. The former may be preserved, while the latter is impaired by indiscreet conduct. It does not necessarily follow that they are co-existent. Therefore, if presumption is permitted to dispense with the necessity for proof, the fact of her good repute, as well as her personal chastity, must be presumed.

*Andre* v. *State*, 5 *Iowa* 396, and *State* v. *Higdon*, 32 *Iowa* 262, relying upon the New York case, applied the same rule.

*People* v. *Roderigas*, 49 *Cal.* 9, was an indictment under a statute making it indictable to entice an unmarried female of previous chaste character from her home for the purpose of prostitution.

The indictment omitted to charge that the female was of previous chaste character.

On demurrer to the indictment, the court held that character in this respect was a fact which must not only be alleged, but also established by the prosecution, in order to convict; that it was not a presumption of law to be indulged against the counter presumption of innocence.

*West* v. *State*, 1 *Wis.* 186, is a well-considered case to the same effect.

The latest declaration on the subject is that of the Massachusetts Supreme Court, April Term, 1881, in Commonwealth v. Whittaker, "that in an indictment under a statute for enticing to a house of ill-fame, for purposes of prostitution, two women of chaste life and conversation, the chastity of the women must be proved by the state in the same way as any other material allegation in the indictment. If the women were unchaste no offence was committed within the meaning of the statute, and their chastity must, therefore, be established as laid in the indictment, by affirmative proof."

The court below erred in permitting the jury to presume, as a fact, that which it was incumbent on the state to maintain by affirmative proof.

Error is also assigned upon the charge of the court to the jury as to the necessary corroboration of the prosecutrix.

Our statute requires that the evidence of the female shall be corroborated to the extent required in case of indictment for perjury.

The test of the correctness of the charge will be, whether the matter submitted to the jury as corroboration in this case would be sufficient with the oath of the female to convict the defendant of perjury in swearing that there was not a promise of marriage.

Formerly, it required the testimony of two witnesses to convict of perjury, but the rule has been so far relaxed as to permit a conviction upon the oath of one witness supported by the proof of strong corroborating circumstances of such a character as clearly to turn the scale and overcome the oath of the defendant and the legal presumption of his innocence.

A larger measure of corroboration is requisite than that which is essential to support the testimony of an accomplice against his confederates in crime; something more than the mere weight of evidence in favor of the state.

Such evidence will satisfy the New York statute, which simply requires the evidence of the female to be supported. *Kenyon* v. *People*, 26 *N. Y.* 204; *Boyce* v. *People*, 55 *N. Y.* 644.

Our statute is manifestly intended to be more exacting.

The corroborating circumstances must relate to the substance of the evidence on which perjury is assigned, and be inconsistent with the truth of the prisoner's statement; until that point is reached, there is a failure to corroborate, in a legal sense.

The authorities will be found to support this view of the law. *Roscoe's Cr. Ev.* 823; 2 *Whart. Cr. L.*, § 2276; 1 *Greenl. Ev.*, § 257; *United States* v. *Wood*, 14 *Peters* 430; *Commonwealth* v. *Parker*, 2 *Cush.* 223.

As an illustration of this rule, courtship would not be a sufficient corroboration of the promise to marry, because although it is consistent with the woman's affirmation of such

Zabriskie v. State.

a promise, it is not inconsistent with the defendant's denial. The ordinary visits by young men in the country to young women, do not imply an engagement to marry. When they are of such a character and of such frequency that parents and intimate friends may reasonably be led to believe that an engagement to marry exists; when a jury may lawfully infer a promise from them, if they were the only evidence, in a suit for breach of promise, then they become corroborative, in a legal sense, under this statute, for the reason that they are then (but not until then,) inconsistent with the truth of the defendant's denial of the promise.

In this case, other young men had visited the prosecutrix during the time she received the defendant's attentions. If such corroboration is sufficient, these visits would have furnished the requisite additional proof against either of these young men.

On this branch of the case exception was taken to that part of the charge which charged the jury that if it would be more likely that the prosecutrix, if a girl of good repute for chastity, would not consent to carnal connection with the defendant without a promise of marriage, then the fact that she did surrender herself might be used to lend corroboration to her statement that he did so promise.

This, in effect, left the jury to find, in their own reasoning, corroboration of the testimony of the prosecutrix. It permitted them to find the promise on her unsupported evidence, if they considered it more probable that she would not have submitted to the defendant's embraces without the promise. It not only gave the jury liberty to throw into the balance against the defendant the presumption that her story was the more probable, but it left it to the jury to find the promise upon her uncorroborated evidence, if they concluded it was more reasonable to believe than not to believe her. The fact that she was of previous chaste character did not give the requisite probative force to her statement, for it was only the evidence of one person of good character.

It has never been supposed that a defendant could be con-

Zabriskie v. State.

victed of perjury upon the oath of a single witness by merely introducing testimony to show that the defendant's reputation for truth is bad, and that, therefore, it is more reasonable to believe the principal witness for the state than to credit the defendant's oath.

If it became a material fact on the trial of a cause, which of two roads leading to his home C had taken at a late hour on an inclement night, and B should testify that he had met C on the longer and worse of the two roads, no support can be found in the law for holding that on the trial of B for false swearing, the improbability that C at such an hour of the night would take the longer road, would furnish sufficient corroboration of his own oath to justify a conviction for perjury.

I can see no difference between the supposed case and that stated in the exception.

The charge of the court clearly dispensed with the necessity for corroboration.

The defendant also excepted to that part of the charge which left it to the jury to determine whether the conversation between the prosecutrix and her father, after he discovered her pregnancy, in which, in substance, she stated that the defendant was the father of the child, was a circumstance of corroboration to prove his carnal connection with her, and that he was the father of the child.

This instruction from the court left the jury at liberty to find corroboration of the girl's statement, under oath, in what she said when she was not under oath.

The conversation was in the absence of the defendant, and could not have been admitted as competent evidence on the part of the state; it came into the case on cross-examination by the defendant's counsel.

If such conversation had such probative force that it could be relied upon as corroboration, in a legal sense, in the trial of an indictment for perjury, it would most emphatically condemn the admitted rule of evidence which excludes such testimony if offered by the state.

In what the jury found the needed. support of the girl's story does not appear.  As the case was left to them, the verdict might 'have been based exclusively on the circumstance alluded to in either of these exceptions.

In these respects there was error in the charge.

If it be said that this interpretation of the statute will render it difficult to convict, the answer is that the framer of the act did not insert this clause as to corroboration for the purpose of making conviction easy.

A further question is raised by the plaintiff in error as to a matter appearing upon the record.

After verdict was rendered, the Quarter Sessions, before which the defendant was tried, failed to pronounce judgment, owing to a division of the judges in the exercise of their discretion as to the measure of punishment.  Thereupon a writ of *certiorari* was issued out of the Supreme Court on the application of the prosecutor of the pleas, and the record was certified into the Supreme Court and judgment there given.

It is insisted that a writ of *certiorari* cannot be awarded at the instance of the attorney-general, and that the Supreme Court had no power to pass judgment upon the defendant.

All that can be reviewed here is the question of power.  We cannot consider whether the Supreme Court, in the exercise of a wise discretion, should have sent the case back to the Sessions to impose the judgment of the law.

That the King's Bench claimed the right to certify from the inferior tribunal, a conviction before judgment, at the instance of the crown, is shown by some of the early cases.

In *Regina* v. *Potter*, 2 *Ld. Raym.* 938, Lord Holt says the right is without question, and he refers to an instance in which the writ was awarded in the time of Chief Justice Scroggs, to the end that the King's Bench might give judgment for the greater example.

In *Rex* v. *Gwynne, Burr.* 752, there was no question made as to the right to issue the writ; the subsequent granting of the *procedendo* was a matter of discretion.

*King* v. *Inhabitants of Oxford*, 13 *East* 411, was the

refusal of the writ of *certiorari* for the purpose of determining in the King's Bench whether a new trial should be granted in the court below on the ground that the verdict was against the evidence.

In *King* v. *Jackson*, 6 *Term R.* 145, Lord Kenyon did not deny the power of the court, but thought the practice ought not to be encouraged.

In this state the power of the Supreme Court was recognized as early as the case of *State* v. *Hunt*, *Coxe* 287, where an indictment against the defendant for assault and battery was certified from the Hunterdon Sessions into the Supreme Court on application of the attorney-general. The power of the court was challenged, and it does not appear by the report of the case what disposition was made of the indictment. A reference, however, to the minutes of the court, will show that process was issued to bring the defendant into court, and that the court ordered the proceedings in the Sessions had after *certiorari* issued, to be set aside, and that the defendant be charged on the indictment, whereupon he was sentenced to pay a fine of $30, and stand committed until the fine and fees were paid. See *Minutes of September Term*, 1795; *Minutes of May Term*, 1796, *p.* 79.

In *State* v. *Webster*, 5 *Halst.* 293, an indictment had been quashed in the Quarter Sessions for insufficiency, whereupon the attorney for the state certified the indictment into the Supreme Court to review the action of the Sessions. The Supreme Court sustained the ruling of the Sessions, saying, however, that no opinion was expressed as to the propriety of bringing the case up by *certiorari*.

I think that by this expression, the court intended to intimate that there might be a distinction between cases where judgment had been passed in the court below and where the case had not proceeded to judgment in the inferior tribunal. In the former case, a writ of error might be the appropriate remedy.

That this distinction was supposed to prevail in the practice of the court may be inferred from the fact that in the case

cited from Coxe, the court ordered the return to the *certiorari* to be amended so as to show whether it was awarded before judgment was rendered in the court below. *Minutes of Sup. Ct., April Term*, 1796.

Since the case in Coxe, the power of the Supreme Court to award the writ at the instance of the attorney-general, before judgment below, has, so far as my information extends, never been denied.

In my opinion, the Supreme Court had the power to pass judgment upon the defendant.

For the reasons before stated the judgment should be reversed and a new trial ordered.

*For affirmance*—WHITAKER—1.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, DEPUE, VAN SYCKEL, COLE, DODD, GREEN, LATHROP—8.