## STATE vs. JOHN LYNN.

*What State Must Prove—Criminal Law—Indictment—Obtaining Money by False Pretense—Venue; Change of—Prejudice; Evidence of—Exceptions to Rulings; When Allowed— Rule to Show Cause—Practice—Judges and Jurors; When Disqualified—Challenge; Waiver of— Statute; Construction of—Intent to Defraud— Receiver of Taxes and County Treas- urer; One Office—Powers of over County Funds—Character Testimony.*

1. In an application to change the venue in a criminal cause a rule to show cause is not necessary, because the State, being represented, takes notice of the motion. And it is the same with respect to an application to quash the indictment.

2. The suggestion to change the venue is entered on the record after the decision of the Court and not before.

3. The rule of law governing the change of venue upon the ground of prejudice is that the Court must be satisfied of such prejudice by facts and circumstances ; mere opinion is not enough. What evidence is required to sustain the charge of prejudice ?

4. Judges and jurors are disqualified to try a case in which they have a pecuniary interest, and a change of venue should in such case be granted ; but an interest as inhabitants and taxpayers of the county is not such a direct, tangible and substan-

tial kind as to disqualify them, even though the defendant might be liable to the imposition of a fine which would be payable to the county.

5. Exceptions cannot be noted to the rulings of the Court refusing to change the venue, to quash the indictment, or to quash the array of the panel of the jury.

6, Neither can an exception be noted to the refusal of the Court to instruct the jury to return a verdict of not guilty, at the conclusion of the evidence for the State. The proper course is to ask the Court, when they come to charge, to so instruct the jury.

7. If the State waives its right to challenge, it can only thereafter exercise its challenges as to those who are called after such waiver.

8. In order to secure a conviction for obtaining money by false pretense, the State must prove (1) That the defendant knowingly made a false pretense. (2) That he made such pretense with intent to cheat and defraud the person from whom he obtained the money. (3) That by such pretense he actually did cheat and defraud such person, and did obtain from him thereby in coin or paper money, or both, lawful money the property of such person.

9. A false pretense is such a fraudulent representation of a fact, past or existing, by a person who knew it to be untrue, as is adapted to induce the person to whom it is made to part with something of value. Such false pretense may consist in any act, word, symbol or token calculated to deceive another, and knowingly and designedly employed by any person with intent to defraud another of money or other personal property.

10. A false pretense which has ultimately accomplished its purpose of fraudulently obtaining money or other property will follow and taint with fraud every step in the transaction from its inception to its conclusion, however circuitous its route or however many agencies it may use.

11. Under the act passed April 28, 1891 (*Code 89*, etc.), the words "Receiver of Taxes and County Treasurer" do not describe two distinct offices, but con. stitute the proper legal title of the person occupying one office, who is properly described in the indictment as the " Receiver of Taxes and County Treasurer." Such officer is not only the Receiver of Taxes, with authority to receive and deposit moneys arising from taxes in bank, but he is also the disbursing officer of such funds, which can only be drawn and obtained under the law by warrants drawn upon him as such Receiver of Taxes and County Treasurer, made, signed and countersigned as required by law. As such disbursing officer, he has such control and possession of the county funds, and such property therein, as to sustain an indictment which lays the property in question in him as Receiver of Taxes and County Treasurer.

12. When the county funds have been deposited in bank as prescribed by law, and when a specific sum is separated and appropriated by said bank or its agent, for

the payment of a warrant to the holder thereof, in accordance with the direction or authority of the Receiver of Taxes and County Treasurer, it thereupon becomes—and is paid out, in contemplation of said act as—the money and property of the Receiver of Taxes and County Treasurer.

13.   The intent to cheat and defraud is not to be presumed in law, but must be proved, and is a question for the jury to determine from all the acts and representatations of the defendant in the transaction, as shown by the evidence.

14.   A. B., Receiver of Taxes and County Treasurer is a person within the meaning of the word "person" as employed in the act.

15.   Evidence of good character, like any other evidence tending to establish innocence, is entitled to just so much weight as under all the circumstances of the case the jury deem proper to give it.

*(December 5–19, 1901.)*

LORE, C. J., and SPRUANCE and GRUBB, J. J., sitting.

*Herbert H. Ward,* Attorney-General, and *Robert H. Richards,* Deputy Attorney-General, for the State.

*Walter H. Hayes* and *Levi C. Bird* for the defendant.

Court of General Sessions, New Castle County, November Term, 1901.

INDICTMENT FOR OBTAINING MONEY BY FALSE PRETENSE (No. 49, November Term, 1901).

Counsel for defendant filed the following motions:

" And now, to wit, this fifth day of December, A. D. 1901, the above named defendant in the above cause, by Walter H. Hayes and Levi C. Bird, Esquires, his attorneys, moves the Court here for the entry of a suggestion on the record, in order to change the venue in the above stated cause to Kent County, and for a rule to show cause on the State of Delaware, in said cause, why venue should not be changed to said Kent County.

"The above named defendant, by Walter H. Hayes and Levi C. Bird, his attorneys, moves the Court here, to quash the above stated indictment for the following reasons:

"1. Because said indictment was considered, found and returned to the Court here as a true bill by the grand jury of said New Castle County, every member of which is a taxable citizen of said county, and therefore interested in the result of said cause.

"2. That said indictment is uncertain, insufficient and indefinite."

"The defendant in the above stated cause, by Walter H. Hayes and Levi C. Bird, his attorneys, moves the Court here that a suggestion be entered on the record thereof stating that there is a legal exception to the Honorable Charles B. Lore, Chief Justice, the Honorable William C. Spruance and the Honorable Ignatius C. Grubb, Associate Judges, sitting in said cause."

In support of said motions many affidavits by citizens of the county were read by Mr. Bird, and ordered filed. Mr. Ward subsequently filed counter affidavits. The substance of said affidavits is set forth in the opinion of the Court.

*Mr. Bird:*—I ask that the suggestion be entered on the record to change the venue to Kent County, and that there be issued a rule to show cause why the venue should not be changed to Kent County.

*State vs. Windsor, 5 Harr., 512 ; State vs. Burris, 4 Harr., 582.*

LORE, C. J. :—We think it does not require a rule. The State is represented here and takes notice of your motions—one to quash the indictment and the other to change the venue.

*Mr. Bird:*—We desire the clerk to set out upon the record the suggestion to change the venue.

*Mr. Ward:*—The suggestion is after the decision of the Court.

LORE, C. J. :—That is after the decision of the Court. The application now is to file the papers. You have permission to file your motions and affidavits.

On December 7th arguments were made.

LORE, C. J. :—The motion for change of venue from New Castle, to Kent County is founded upon the allegation that the defendant cannot have a fair and impartial trial in New Castle County for two reasons :

1. That the Judges and jurors, who are to try the case, are all inhabitants and taxpayers of the county, and some of them freeholders therein ; that as such, they are disqualified to sit in the case, being pecuniarily interested in any fine that may be imposed upon the defendant in case of conviction ; which fine under the law of this State goes to the county.

2. Because there exists in the county a wipe-spread excitement and prejudice against the defendant.

We will consider the last named reason first.

The rule of law upon the ground of prejudice is that the Court must be *satisfied* of such prejudice by *facts* and *circumstances;* mere opinion is not enough.

*People vs. Bodine, 7 Hill, 147 ; State vs. Windsor, 5 Harr., 512; State vs. Burris, 4 Harr., 582.*

The defendant has filed the affidavits of nine citizens of this county in addition to his own ; who severally swear that they do not believe a fair and impartial trial can be had in this county, and give the facts and circumstances upon which they base their opinion·

*Robert W. Currinder* swears, that he heard a Mr. Gayner say

" He would like to see John Lynn and the whole Levy Court arrested."

*George H. Paradee* swears, that he heard one William Gibbons on Maryland Avenue in the presence of a number of citizens say, " That John Lynn, the damn bugger, ought to be in jail." Also he heard other persons, whose names he does not know, say, " John Lynn ought to be put in jail for ten years."

*Alfred D. Vandever* swears, that he heard a man named Riley whose first name he does not know, say, " John Lynn ought to go to jail, that he was not better than a damned thief." Also heard Ambrose McVey say, " John Lynn ought to go to jail." Also heard several citizens say, whose names he cannot recall, " John Lynn ought to go to jail."

*Millard F. Gregg* swears, that he heard James Hunter say, "John Lynn ought to have his back lashed and the whole Levy Court ought to be in jail." Also heard Mr. Gayner say that " John Lynn and all the other members of the Levy Court ought to be in jail."

*John W. McCoy* swears, that he heard various parties, whose names he cannot recall, say " That John Lynn was a damned rascal and ought to be in jail."

*William Gamble* swears, that on the 26th day of November, at Rising Sun, in this county, before a number of people, he heard Daniel Dohl say, " That man, meaning John Lynn, who built the tunnel at the Workhouse, would walk through it; he would not want to be in John Lynn's place."

*Alfred T. Coverdale* swears, that he heard Charles Lippincott, at the works of the Harlan & Hollingsworth Company, in the presence of several persons, say, " John Lynn, the son of a bitch, ought to be put in jail for robbing the county."

*Lindsey S. Wilson* swears, that he heard Mr. Gayner say, before two persons, that " He was glad the committee of fifty had caught hold of it; he would like to see the whole of the Levy Court arrested, and mentioned John Lynn."

*James Keenan* swears, that he heard Philemma Chandler, a Levy Courtman, say, " John Lynn ought to resign from the chairmanship of the Levy Court, that he thought if he would, the indictment against him would be dropped, and that other citizens were of the same opinion."

Five of these affiants, viz., Currinder, Gregg, McCoy, Gamble and Wilson, hold office and receive their pay under the control of the Levy Court, of which the defendant is the president.

The material averments in the affidavits of William Gamble and James Keenan are expressly denied by Daniel Dohl and Philemma Chandler, who are charged with hostile expressions, in counter affidavits made by them and filed in this case.

The remaining hostile expressions are confined to about twelve other persons, some of whom were unknown to the affiants, and the expressions seem to have been accompanied by no excitement or approval on the part of the persons to whom they were addressed.

The defendant has therefore produced nine persons out of the entire population of this county, nearly all of whom reside in the City of Wilmington, who swear that they do not believe a fair and impartial trial can be had. On the other hand, the State has produced the affidavits of 186 reputable citizens from different parts of the county to the contrary ; 47 of whom are members of the Citizens Association, whom the defendant alleges in his affidavit have combined, raised money and employed lawyers to prosecute him ; but who aver they have no prejudice whatever against the defendant personally, but are only seeking to secure an honest administration of the finances of the county and to promote good government.

It is manifest from this state of facts that the charge of prejudice is not sustained.

The second reason for a change of venue, viz., the pecuniary interest of the Judges and the jurors who are to try the case, if it be true, unquestionably disqualifies them, and the change of venue should be granted.

It is a fundamental maxim of our law that no man shall sit as judge in his own cause ; while it is equally true that the humblest as well as the most depraved of our people are guaranteed a fair trial by an impartial jury. The only question, therefore, for us to decide is, whether such pecuniary interest exists, either in law or reason, in the Judges and jury who are to try this case.

We have carefully examined the authorities cited by the counsel for the defendant in support of their contention ; from the case of *Hesketh vs. Braddock, 3 Burrows, 1847*, down ; and are clearly of the opinion that all the well considered cases may be distinguished from the case at bar, and do not support the contention. Many of them were civil actions, and in all, the persons objected to were either practically parties to the action, or had such a distinct and tangible interest as to bring them within the principle and reason of the rule.

It should be borne in mind that this is in nowise an action for the *recovery* of a penalty or fine ; in which the Judges or jury are directly interested ; but it is a prosecution in the name of the State in which the fine is only a part of the punishment for the criminal offense charged in the indictment; it is therefore incidental to, and not the purpose or object of the prosecution ; clearly showing that it comes neither within the reason or authority of the cases cited.

In *Commonwealth vs. Ryan, 5 Mass., 90*, much relied upon by defendant's counsel, which was an indictment for keeping a billiard table, where the fine went to the City of Boston, the objection being to the foreman of the grand jury, who was a citizen and taxpayer of Boston, C. J. Parsons reasoning independently of the Massachusetts

statute says : "That great care should be taken to provide judges and jurors as free from interest as possible, there can be no doubt. It is not only a maxim of law, but is a sound principle of natural justice. But it is sometimes not possible perfectly to adhere to it. Every fine to the use of the commonwealth may affect the interests of every citizen, as it may 'concern the public taxes, but if citizens cannot be judges or jurors no offenses can be punished by fine. Where penalties are given to counties, the inhabitants may have an interest somewhat greater, and where penalties accrue to towns, the interests of the inhabitants may be a little more affected. This is all true in theory, but in practice it cannot be believed to have any effect."

The same doctrine is clearly maintained in *Commonwealth vs. Worcester, 3 Pickering, 464.*

The case of *Commonwealth vs. Delamater, 145 Pa. St., 210,* meets the precise question in this case, and the opinion of Chief Justice Paxson is very emphatic. See also *State vs. Bodine, 7 Hill, 147.*

In *The Inhabitants of Northampton vs. Smith, 11 Met., 390,* which was a legacy to the town for the benefit of indigent persons of the town, it was held that a Judge of Probate who was a taxable and inhabitant of the town was not disqualified.

Chief Justice Shaw in discussing the question, independent of the Massachusetts statute, uses this language: "It is true that the plain dictates of natural justice, independent of all articles of *Magna Charta*, bills of rights, or other provisions of positive law, requires that a man shall not judge in his own cause. And it is only a just application of this principle, that he shall not sit in judgment in deciding a question in which he has a pecuniary interest. But this, like all other very general propositions, in order to make it the basis of a practical rule, must have a reasonable construction, and must be taken, not as absolute and invariable, but with all necessary and implied qualifications. If the term *interest* were used in the loose sense it sometimes is, consisting in a strong and sincere

desire to promote all enterprises for the advancement of learning philanthropy and general charity or similar interest with all good men, to repress and put down pernicious and mischievous schemes, no man could be found fit to be entrusted with the administration of justice; for no man can be exempt from such interest. But even where there are pecuniary interests there must be some exceptions; as where the commonwealth is a party in a criminal prosecution, or a penal action; where the penalty enures to the State, and all civil suits or recognizances and other debts, or for the recovery of property, every citizen has a pecuniary interest. And yet none but citizens can be judges. Our own bill of rights has made some approximation towards the limitation of the generality of the maxim by declaring (Article 29) that it is the right of every citizen to be tried by judges as free, impartial and independent as the lot of humanity will admit."

He defines the nature of the interest as follows:

1. It is not a mere possible, contingent interest; not an interest in the question or general subject, to which the matter requiring adjudication relates; but one that is visible, demonstrable and capable of precise proof.

2. It must be a pecuniary or proprietory interest, the relation by which, as a debtor or creditor, an heir or legatee, or otherwise, he will gain or lose something by the result of the proceedings, in contradiction to an interest of feeling, or sympathy or bias.

3. It must be certain, not merely possible or contingent. It must be direct or personal; though such a personal interest may result from a relation which the judge holds as a member of a town, parish or other corporation, which corporation has a pecuniary or proprietory interest in the proceedings.

Under these decisions, it would appear that the interests of the Judges or jurors in the case as inhabitants and taxpayers of

New Castle County, is not of that direct, tangible and substantial kind as to disqualify them; but rather of the quality that Chief Justice Parsons in Commonwealth *vs.* Ryan above cited, designates " *a theoretic interest.*"

The act of the General Assembly passed March 31st, 1881, *Rev. Code, 47,* provides : " That all fines and forfeitures, heretofore made under the provisions of sections 5 and 6 of Chapter 7 of the Revised Statutes of this State, forming a part of the revenue of, and belonging to the State, and that shall not hereafter be otherwise appropriated, shall belong to the county in which any such fines or forfeitures may be imposed or incurred—and they shall be paid to the County Treasurer of such county by the officer collecting or being chargeable with them."

Under this act, it would seem that the fine, if any should be imposed in this case, would go to the county where it was imposed or incurred. The reasonable interpretation of the language and scope of the statute being that it should belong to the county in which the expense of the trial was incurred.

If the venue, therefore, was changed to Kent County, the resident Judge and the jurors of Kent County would be disqualified; the like condition would result if the venue was changed to Sussex County, and consequently the accused could not be tried at all.

Again, in cases where the fine should go to the State, every resident Judge and juror of the State would be disqalified, and as the venue could not be changed to another State, the result would be that crime would be encouraged and the criminal go unpunished.

From all that appears in this case, we see nothing to prevent the defendant from having a perfectly fair trial before impartial Judges and jurors in this county.

The change of venue is refused.

The other question raised was upon quashing the indictment, upon two grounds : One of these was the interest of the Court and the grand jury, which we have already passed upon.

The other ground is based upon alleged defects in the indictment. After considering the arguments upon that branch, which were very full, we do not see any lack of material averments that would warrant this Court in quashing the indictment on either of the points raised. We, therefore refuse to quash the indictment.

(Counsel for defendant thereupon asked the Court to note an exception to the above ruling of the Court refusing the motions for a change of venue and to quash.)

Application refused (*4 Ency. of Law, 495 ; 2 Ency. Law and Procedure, 595.*)

On December 18th the case came on for trial, when the following paper was filed :

" And now, to wit, this eighteenth day of December, A. D., 1901, the said defendant, by Walter .H. Hayes and Levi C. Bird, his attorneys, at the bar of the Court here, challenge the array of the panel of the petit jury, now in attendance upon this honorable Court, and which constitutes the petit jury of the said Court for the present term thereof; and assign for cause of said challenge the following, viz :

"1.   That each and every one of said jurors is a taxable citizen resident in New Castle County.

"2.   That each and every one of said jurors has a pecuniary interest in the result of the trial of the defendant, on the above stated indictment, which pecuniary interest exists by reason of their being taxable citizens of said New Castle County."

LORE, C. J. :—The Court refuse to quash the array.

*Mr. Bird :*—We ask your Honors to note an exception for the defendant. We have authority to show that such a challenge is an exceptionable matter.

LORE, C. J. :—There can be no authority outside of the Constitution and statutes of this State. Your application is on the record, but we refuse to note the exception.

When the jury were called to the box the Attorney-General stated he was satisfied with the jury as then constituted, but remarked that he desired to reserve his right to pass upon any man in the box.

*Bird*, for defendant, contended that the Court had ruled otherwise in *State vs. Brown, et. al., 2 Marvel, 380*, and that if the State passed the jury as empaneled it waived its right to subsequently challenge any of the said jury but could only challenge such jurors as were called after such waiver.

LORE, C. J. :—The Court were at first inclined to rule against the contention of counsel for defendant, but upon examining the case of *State vs. Brown, et. al., 2 Marvel, 380*, we find that this Court there ruled that if the State waived its right to challenge, it could only thereafter exercise its challenges as to those who are called after such waiver. And we so rule in this case.

At the conclusion of the State's evidence, defendant's counsel asked the Court to instruct the jury to acquit the defendant.

LORE, C. J. :—The Court are unanimously of the opinion that this request to direct the jury to return a verdict of not guilty should be refused.

*Mr. Hayes:*—Will your Honors allow us to note an exception. In the case of *State vs. Foster, 1 Pennewill 289, (292)*, Mr. Ward made a motion to instruct the jury, as we have done, and it was overruled and an exception allowed.

LORE, C. J. :—You cannot note an exception to this. We

have often permitted an exception to be noted for what it is worth, but it causes us trouble. You can reach this in another way. When we come to charge the jury you can then ask the Court to direct the jury to return a verdict of not guilty. Then you can except properly. But this is not the place nor the time.

LORE, C. J., charging the jury:

Gentlemen of the jury:—John Lynn, the defendant, is indicted for obtaining money under false pretenses.

The indictment charges that on October 2, 1900, the defendant, John Lynn, intending to cheat and defraud Horace G. Rettew, Receiver of Taxes and County Treasurer of New Castle County, knowingly and falsely pretended to George D. Kelley, the County Comptroller of said county, that certain work and labor had been done by one Lawrence M. Whiteman upon bridges in the said county, and that the said Whiteman was entitled to be paid therefor; when in fact no such work and labor had been done.

That the said pretense consisted of a false bill, which is as follows:

" Wilmington, Del., Oct. 2, 1900.
" LEVY COURT, NEW CASTLE COUNTY,
        " To Lawrence M. Whiteman, DR.

" FIRST DISTRICT.    For Repairing Bridges—

| | | |
|---|---|---|
| 2 men, 8 days, $2.50 per day.................. | $20.00 |
| 3  "  8  "  3.00  " .................. | 24.00 |
| 2  "  8  "  1.50  " .................. | 12.00 |
| | $56.00 |

" O. K.   J. L."

That by said false pretense he secured the approval of the said bill by the said County Comptroller; that by reason of and

pursuant to said false pretense he then procured the approval thereof by the Levy Court, and obtained a warrant upon the said Horace G. Rettew, Receiver of Taxes and County Treasurer, commanding him to pay to the said Lawrence M. Whiteman or bearer the sum of fifty-six dollars, which warrant was signed by William A. Scott, as President of the Levy Court of New Castle County, countersigned by the said George D. Kelley, County Comptroller. That the said defendant further, in pursuance of said false pretense, received the said warrant in his possession, endorsed it with his own name, and procured the same to be paid out of the funds, cash and money of him, the said Horace G. Rettew, Receiver of Taxes and County Treasurer as aforesaid; which money he did then and there convert to his own use.

It is claimed by the State that the moneys of said Horace G. Rettew, Receiver of Taxes and County Treasurer, were on deposit in the Farmers' Bank at Wilmington; that John Lynn received the money upon the warrant from the Central National Bank of Wilmington, that the warrant then passed through the clearing house to the said Farmers' Bank, where the moneys of the said Horace G. Rettew, Receiver of Taxes and County Treasurer, were deposited, and where he had arranged that warrants on him as such Receiver of Taxes and County Treasurer should be paid.

The indictment is framed under the act of the General Assembly passed February 28, 1857, *Rev. Code, 967*, which reads as follows :

" That if any person shall, by any false pretence, obtained (obtain) from any other person any chattel, money or valuable security, with intent to cheat or defraud any person of the same, every such offender shall be guilty of a misdemeanor," etc.

In order to convict under this indictment the State must prove to your satisfaction, beyond a reasonable doubt :

1. That the defendant knowingly made a false pretense.

2. That he made such pretense with intent to cheat and de-

fraud Horace G. Rettew, Receiver of Taxes and County Treas-
urer.

3.   That by such pretense he actually did cheat and defraud
the said Horace G. Rettew, Receiver of Taxes and County Treas-
urer, and did obtain from him thereby in coin or paper money, or
both, lawful money then the property of the said Horace G. Ret-
tew, Receiver of Taxes and County Treasurer aforesaid.

A false pretense has been defined to be "such a fraudulent
representation of a fact, past or existing, by a person who knows it
to be untrue, as is adapted to induce the person to whom it is made
to part with something of value."
     *Jackson vs. People, 126 Ill., 139 ; 2 McClain on Crim. Law,
Sec. 66.*
     Such false pretense may consist in any act, word, symbol or
token calculated to deceive another, and knowingly and designedly
employed by any person with intent to defraud another of money
or other personal property.
     On this point, therefore, if you should be satisfied from the
evidence that the bill for fifty-six dollars, for work and labor made
out in the name of Lawrence M. Whiteman was false and fraudu-
lent; that the work and labor had not been performed, and that the
said Lawrence M. Whiteman was not entitled to any such money,
that the defendant, John Lynn, knowing the bill to be false and
fraudulent, presented it as a just claim to the said George D.
Kelley, as County Comptroller, for his approval; then we say to
you that such false and fraudulent bill so presented by the defend-
ant would constitute a false pretense in law.
     Again; if by reason of such false pretense, the defendant
obtained the approval of said George D. Kelley, County Comp-
troller, to the said bill, and through such approval procured a warrant
signed by William A. Scott, President of the Levy Court of New
Castle County, countersigned by said County Comptroller, upon
the said Horace G. Rettew, Receiver of Taxes and County

Treasurer, for the sum of fifty-six dollars; then such false pretense would in law become incorporated in the said warrant upon which it was based, and follow, affect and taint each. successive step in the transaction, up to and until the money was actually paid to the said John Lynn upon the warrant, if it was so paid; inasmuch as such steps would only be stages in the journey of the said false pretense.

In *The People vs. Genet, 19 Hun (N. Y.), 91,* a case much like this; this doctrine was distinctly held. There Genet had by false pretense procured the certificate of approval of a fradulent bill from the commissioners to erect a court house in New York; sent it to the comptroller's office, where it was audited, and a warrant was prepared and signed by the comptroller and mayor, based upon such certificate by the commissioners; and Genet got the money upon the warrant. The Court used this language: " The defence relies, with much confidence, upon the fact that the defendant made no representations personally to the mayor or to the comptroller or to the auditor. It must be admitted that he made no representation personally to the mayor, inasmuch as no interview between them has been shown. But he cannot escape from the charge that he did indirectly make to the mayor a false representation—a false pretense—by the preparation and use of the bill, which through his direct instrumentality, became a voucher, and upon which, thus created by him, the auditor, the comptroller and mayor acted. Indeed it may be said that this is a liberal statement of the effect of that paper, so far as the defendant is concerned, because it might, with great propriety, be said that the bill prepared by him, and which he knew must form the basis of such proceedings as would take place in the fiscal department of the city, was a direct statement on his part that its contents were true to each person whose duty rendered it necessary for him to examine and act upon it. It was this proceeding, this pretense, which set the claim in motion and formed, as already suggested, the very foundation of all that was subsequently done to consum-

mate the wrong designed. His actual presence was not necessary to accomplish the offense. It was sufficient, therefore, the intent to cheat and defraud existing, to accomplish the commission of the crime, that the bill influenced the mayor to give his signature to the warrant, because it was the exclusive, as it was the necessary, foundation upon which all the ceremonies to effectuate it rested. Without the bill there would have been no certificate, no audit, no warrant, and therefore, no act of the mayor. The defendant was dealing with the funds of a corporation to be reached by certain forms designed for the security of its members, and knew the mode by which those forms could be applied. The bill was in effect, equivalent to a verbal representation therefore."

The same case was carried to the Court of Appeals, under the the title of " *People vs. Oyer and Terminer,*" *83 N. Y. Repts., 436.* The Court of Appeals is still more empathic on this point on page 453, where it says, after citing certain cases, in which the false representation or writing reached the victim through the intervention of innocent third parties : " However indirect or circuitous the channel by which it reaches its destination, when there, the person who gave it its direction and aim is also there by the instrument used to effect his purpose. Its bare presence, although neither examined or read by the mayor, was a false pretense. It did deceive him ; it did procure his signature ; it said to him by its mere presence that it was an honest claim awaiting payment, when in truth, it was a bold fraud, simultating honesty to procure a warrant for a sum, no part of which was due."

See also *Commonwealth vs. Sweet, 4 Pa. Dist. Repts., 132 ; Roberts vs. The People, 9 Colo., 458.*

So that, it may be safely affirmed as a principle of law, based upon common sense, founded in reason and supported by authority ; that a false pretense, which has ultimately accomplished its purpose of fraudently obtaining money or other property, will follow and taint with fraud every step in the transaction from its

inception to its conclusion, however circuitous its route, or however many agencies it may use.

With this explanation of what constitutes false pretense, you are next to inquire whether the false pretense, if any such was made by the defendant, was made with intent to cheat and defraud the said Horace G. Rettew, Receiver of Taxes and County Treasurer.

If you believe from the evidence, that his intent was to procure money from Horace G. Rettew, Receiver of Taxes and County Treasurer as aforesaid, by means of a bill which he knew to be false and fradulent, for work and labor which he knew had never been rendered; then such false pretense would constitute an intent to cheat and defraud said Horace G. Rettew, Receiver of Taxes and County Treasurer, and would sustain the indictment upon this point. Such intent is not presumed in law, but must be proved, and is a question for you to determine from all the acts and representations of the defendant in the transaction, as shown by the evidence.

Again; if you should be satisfied from the evidence that the defendant made such false pretense, with such intent to cheat and defraud as above defined, then your next step will be to ascertain whether he did by such false pretense, actually obtain the money of Horace G. Rettew, Receiver of Taxes and County Treasurer aforesaid.

It is upon this point of the case, that the most serious controversy has arisen, and earnest and able arguments have been made both by the Attorney-General and by the counsel for the defendant.

The defendant insists : (1) That the money was not obtained from Horace G. Rettew, Receiver of Taxes and County Treasurer, but from the Farmers' Bank of Wilmington. That the county fund being deposited under the statute in the bank to the credit of the County Treasurer, and mixed with the general funds of the

bank, it became the money of the bank, and thereby Rettew lost possession and control of that money.

2. That as the money was deposited in the bank by Horace G. Rettew, as County Treasurer, it could in nowise be the money of Horace G. Rettew, as Receiver of Taxes and County Treasurer; the Receiver of Taxes and the County Treasurer being two distinct officers.

3. Generally, that Horace G. Rettew, Receiver of Taxes and County Treasurer, had no such property in or possession or control of the money as to warrant the laying it in the indictment as his property.

The State controverts all these propositions.

This contention involves the construction of *Chapter 26, Vol. 19, Delaware Laws,* passed at Dover April 28, 1891 (*Code, 89,* etc.), as to the office and powers of the Receiver of Taxes and County Treasurer.

We have carefully examined this statute, and, without setting out in detail the different clauses bearing upon these points, now state the following conclusions as clearly growing out of the terms of the statute:

1. That the words " Receiver of Taxes and County Treasurer " do not describe two distinct officers, but constitute the proper legal title of the person occupying one office, who is properly described in the indictment as the " Receiver of Taxes and County Treasurer," constituting one office, one officer, with varied duties under the statute.

2. That under the statute, such officer is not only the Receiver of Taxes, with authority to receive and deposit moneys arising from taxes, etc., in the Farmers' Bank, at Wilmington, to his

credit as County Treasurer; but that he is also the disbursing officer of such funds, which can only be drawn and obtained under the law by warrants drawn upon him as such Receiver of Taxes and County Treasurer, made, signed and countersigned as required by law.

3. We hold under the law, therefore, that as such disbursing officer, he has such control and possession of the county funds, and such property therein as sustains the indictment laying the property in the money in question in him as Receiver of Taxes and County Treasurer.

With respect to his control and possession of, and property in the county funds aforesaid, you are to be governed by the law as we are now interpreting it to you; inasmuch as the extent of his possession and control in such county funds is a matter of law under the statute, as interpreted by the Court, and cannot be determined by the opinion of the said Horace G. Rettew, whatsoever that opinion may be. We say to you, that the possession and control of the money and the property therein, was properly laid in such Receiver of Taxes and Country Treasurer in the indictment.

It is unquestionably true, as claimed by the defendant, that generally where money is deposited in a bank, and mixed with the funds of the bank, it becomes the money of the bank. Nevertheless, when the county funds aforesaid have been deposited in the Farmers' Bank at Wilmington, as prescribed by law, and when a specific sum is separated and appropriated by said bank or its agent, for the payment of any such warrant to the holder thereof, in accordance with the direction or authority of the Receiver of Taxes and County Treasurer, it thereupon becomes and is paid out in contemplation of said statute, as the money and property of the Receiver of Taxes and County Treasurer.

We are asked by the defendant to instruct you, " That as the offense charged in the indictment is a purely statutory one, un-

known to the common law, the statute must be construed strictly both in its words and spirit.

In *McCoy vs. State, 9 Houst., 439,* (quoting *Commonwealth vs. Loring, 8 Pick., 374*), the Court say : " It is true it is so laid down as a general rule; and the reason is that the Court shall not be allowed to make that an offense which was not so by legislative enactment. But the rule does not exclude the application of common sense to the terms made use of in the act.

" Criminal statutes must be strictly interpreted, but courts must search for the will of the Legislature, and the rule is not violated in giving to words their full and proper meaning."

*State vs. Thatcher, 6 Vroom, 445; State vs. Crowley, 39 N. J. Law, 264.*

We do not see that the doctrine of proximate or remote false pretense applies to this case. In order to convict, you must be satisfied that it was the false pretense made by John Lynn, the defendant, that enabled him to obtain said money, and if that false pretense was so made by him and did enable him to obtain the money, it would be sufficient.

The indictment charges that the money obtained was the money of Horace G. Rettew, Receiver of Taxes and County Treasurer, who is a *person* within the meaning of the word " person" as employed in the statute. It is therefore unnecessary for us to pass upon the question of whether the County of New Castle is such a " person."

Evidence of good character, like any other evidence tending to establish innocence, is entitled to just so much weight as under all the circumstances of the case the jury deem just and proper to give it.

We have been asked by the defendant to direct you to render a verdict of not guilty.

This, gentlemen, we cannot do. The guilt or innocence of the defendant is the question for you to decide from all the evidence in this case, under the law as the Court have laid it down in

this charge. By the law, so laid down, you are to be governed in reaching your verdict.

Our duty has been performed in declaring the law to you. The grave duty now devolves upon you to determine by your verdict whether the defendant be guilty or innocent of the charge against him.

That verdict should be based upon the evidence alone. No prejudice, no public clamor, or public sentiment, if any such there be, should be permitted to enter into your deliberations; neither should sympathy, favor or partiality.

The defendant stands clothed by the law with the presumption of innocence until he is proved guilty, and every material element of his crime must be proved.

Where testimony is conflicting, it is your duty to reconcile it if you can. If you cannot do so, then you should give credit to the testimony which under all the circumstances of the case you deem most worthy of belief.

If from all the evidence you believe the defendant to be innocent, it is your duty to render a verdict of not guilty. If, on the other hand, from all the evidence, you believe him to be guilty, you should so find. You stand impartially between the defendant on the one hand and the people on the other.

If upon the evidence you entertain a reasonable doubt as to the guilt of the defendant, that doubt should enure to his acquittal. But it must be a reasonable doubt, growing out of the evidence, and such as reasonable, impartial and conscientious men should entertain after a careful and conscientious consideration of all the evidence before them.

Verdict, guilty.