10 N.J. Super. 107 (1950)
76 A.2d 692
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
WILLIAM F. BULACH, JR., DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued October 30, 1950.
Decided November 13, 1950.
*109 Before Judges McGEEHAN, JAYNE and WM. J. BRENNAN, JR.
Mr. James A. Major argued the cause for appellant (Mr. Joseph H. Gaudielle, attorney).
Mr. Walter G. Winne argued the cause for respondent.
The opinion of the court was delivered by BRENNAN, WM. J., JR., J.A.D.
Defendant was convicted of the crime of perjury in Bergen County Court under an indictment charging that he falsely and corruptly denied when testifying February 7, 1950, before a grand jury inquiring into the murder of one Richard Knight, that on October 18, 1949, he had said to Police Officer Fred Merton, in substance, "The chef used a shiv on him, he got the shiv in the kitchen." A shiv is a knife.
Defendant Bulach operated Pine Lake Lodge in Washington Township, Bergen County. He employed a chef named Hossack. On October 17, 1949, Hossack, Knight and the defendant went to another tavern to attend an affair which continued into the early hours of October 18th. Bulach imbibed freely throughout the afternoon and night. Apparently Hossack and Knight also drank a good deal; they quarreled during the evening. However, when the affair ended, the three rode together in Knight's car to Pine Lake Lodge where Bulach opened his bar and the three had several more drinks. According to the defendant, they broke up about four o'clock when he left Hossack and Knight at the bar while he closed up his place. He said that after locking up he came back to the bar and Knight was not there  he thought Knight had gone home  and he went to his own car, where Hossack was waiting, and drove Hossack to the latter's home in Midland Park. When he returned to Pine Lake Lodge after five o'clock he found Knight lying on the ground, bare to the waist and with a stab wound in his lower abdomen. He telephoned the Westwood police and Merton came to the lodge in a squad car.
*110 Merton and Bulach had a conversation upon Merton's arrival shortly after 5:30 that morning. Merton's version at the trial was as follows:
"Q. You asked Bulach what had happened. A. Bulach what had happened.
"Q. Did Bulach answer you? A. Yes, sir.
"Q. What did he say? A. First he said, `Oh, come on have a drink, kid.'
"I said `No, I don't want any drink, Bill.'
"I said `What happened here?'
"He said `Come on, kid.'
"I said `No, I don't want to.'
"I said `Tell me what happened here.'
"So he put his arm over my shoulder and he said `Look kid, the chef did it. He did it with a shiv,' he said, `It was done right here and he got the shiv in the kitchen.'
"Q. Now, Mr. Merton, for the benefit of the jury, explain what a shiv is. A. Well, it's the common term among gangsters  a shiv is a knife."
No other witness heard this conversation. It is the making on that occasion of the statement concerning the perpetrator of the crime and the instrument with which it was committed that the defendant denied when testifying before the grand jury. The substantial question on Bulach's appeal is whether there was evidence on behalf of the State legally sufficient to supply the ingredient of corroboration of Merton's testimony requisite to sustain Bulach's conviction for perjury.
Few crimes are more difficult to prove than the crime of perjury. The testimony of a single witness, Merton in this case, was not enough. In addition, proof of independent and material facts and circumstances tending directly to show that Bulach did make this statement to Merton was essential. The requirement in perjury cases of corroborative evidence of the testimony of a single witness, an exception to the rule that one witness' testimony suffices in most cases, has been criticized by text writers and some courts. VII Wigmore on Evidence (3rd Ed. 1940), §§ 2040, 2041; Annotation, 111 A.L.R. 825. However, the requirement is firmly embedded in our law. State v. Taylor, 5 N.J. 474 (1950); Zabriskie *111 v. State, 43 N.J.L. 640, at 647 (E. & A. 1881); State v. Lupton, 102 N.J.L. 530 (Sup. Ct. 1926); State v. Ellison, 114 N.J.L. 237 (Sup. Ct. 1935). This does not mean that the testimony of two witnesses is required; the testimony of one witness plus proofs corroborating his evidence suffices. The two-witness rule obtaining in some states probably was not followed at any time in New Jersey, Zabriskie v. State, supra.
The substantial question is the kind or degree of corroborative evidence which must be proved; at least five different tests have been laid down in the various jurisdictions, 41 Am. Jur., "Perjury," § 67. In this State we have adopted the test that the oath of a single witness must be supported by "proof of strong corroborating circumstances of such character as clearly to turn the scale and overcome the oath of the defendant and the legal presumption of his innocence," "something more than the mere weight of evidence in favor of the state," Zabriskie v. State, supra, at p. 647; State v. Carlone, 109 N.J.L. 208, at 211 (Sup. Ct. 1932); see also State v. Lupton, supra, at p. 535; 2 Wharton's Criminal Evidence (11th Ed., 1935), § 913.
The trial court correctly held on defendant's motion for acquittal at the end of the State's case that it was a question for the court in the first instance whether the corroborative evidence offered to support Merton's testimony was legally sufficient, State v. Lupton, supra, at p. 536; Gordon v. State, 48 N.J.L. 611 (E. & A. 1886). The trial court concluded the corroborative evidence was, in law, material evidence tending to establish the falsity of Bulach's oath, denied Bulach's motion for acquittal, and submitted to the jury in substantially the language of Justice Kalisch from State v. Lupton, supra, the question whether the evidence adduced for that purpose by the State tended to corroborate Merton's testimony, and, in conjunction with his testimony, tended to establish beyond a reasonable doubt that Bulach had wilfully and corruptly committed perjury when he denied to the grand jury that he had made the statement to Merton.
*112 We have concluded it was error to deny defendant's motion for acquittal and that his conviction must be reversed; the purported corroborative evidence was in our view legally insufficient as evidence corroboratory of Merton's testimony.
We first consider the evidence given by Dr. Duffy. Knight had been taken from Pine Lake Lodge to the doctor's office for treatment shortly after Merton's arrival; he was then taken to the hospital where he died on October 19th. Bulach accompanied Knight and the police officer to the doctor's office. The doctor testified that while Knight's wound was being sutured, Bulach made a statement implicating Hossack as responsible for Knight's injury. He frankly testified his recollection was indefinite and uncertain, that he did not "know for sure" just what Bulach had said. He said five times in his testimony that the "gist of it," Bulach's statement, was "the chef stabbed Knight;" on four other occasions it was that Bulach had said "the chef must have done it." The vital difference between the two expressions is apparent; his testimony on the whole hardly has the quality of a "strong" corroborating circumstance.
We need not stand on this ground, however, because the doctor's evidence was deficient in a more fundamental particular  evidence is not corroborative unless it tends to prove the fact alleged to have been falsely sworn. Wigmore, supra, § 2042 (c) (3). It must relate to the substance of the evidence on which perjury is assigned, that is, in this case, it must be inconsistent with the truth of Bulach's denial that he made the statement to Merton. "Until that point is reached, there is a failure to corroborate, in a legal sense," Zabriskie v. State, supra, at p. 647. Doctor Duffy's testimony did not "tend directly," Wharton's Criminal Evidence, supra, to show that Bulach had made this, or indeed, any statement to Merton. That Bulach made a statement to Duffy of like tenor hardly would be helpful in supplying legal force to Merton's testimony that a statement had been made to him, Merton. The material issue in the case was, did Bulach make the statement to Merton, as charged in the indictment, and *113 testify falsely to the grand jury in denying that he had done so. Cf. State v. Wallace, 4 N.J. Misc. 627 (Sup. Ct. 1926); State v. Tabas, 10 N.J. Misc. 1212 (Sup. Ct. 1932). We do not see in what respect the fact that Bulach made a statement to Doctor Duffy was corroborative of Merton's assertion that he made a like statement to Merton some time earlier.
The character of the proof required to prove the material issue in the perjury assigned by an indictment is illustrated by the differing results reached in State v. Taylor and State v. Ellison, supra. These cases involved trials of indictments of defendants for subornation of perjury; the corroboration rule extends, however, to the proof that the suborned testimony was perjured although not to the question whether the perjurer was suborned. Wigmore, supra, § 2042 (c) (3), note 6. In the Taylor case, the perjurer, Patti, had falsely testified at his trial for burglary that his co-indictee, Taylor, had not participated with him in the burglary and Taylor had been acquitted; proof that Taylor had been present at the scene of the burglary two days before it was committed and had conversed with the store manager at that time at the location of the burglarized safe, was held properly admitted at Taylor's trial for subornation of perjury as legally sufficient to support Patti's testimony that his, Patti's, testimony at the burglary trial had been perjured. In the Ellison case, the perjurer, Calkins, had falsely testified in an automobile accident case that he had witnessed the accident; proof that the party to the civil suit on whose behalf Calkins testified had been induced by Ellison to remain away from the courtroom while Calkins was on the stand was held legally insufficient as corroborative evidence; it had no tendency to show Calkins was not on the scene of the accident, the material issue in the perjury assigned.
The missing ingredient in Doctor Duffy's testimony is any evidence that Bulach's statement to the doctor was accompanied by any intimation he had made the same statement to Merton. If that element had been present the doctor's testimony would have been competent, in conjunction with Merton's *114 testimony, to establish the State's case. Dodge v. State, 24 N.J.L. 455, at 461 (Sup. Ct. 1854).
The only other testimony relied on by the State is that of Orecchio, chief of Bergen County detectives. Within a day or two after Knight's death on October 19th, and almost four months before Bulach's testimony to the grand jury on February 7th, Bulach was questioned by the Prosecutor of Bergen County in the presence of Orecchio and Merton. On that occasion, according to Orecchio, Merton repeated in Bulach's presence the substance of Merton's version of what Bulach had said to him on October 18th, implicating Hossack, and Bulach did not disavow or deny Merton's statement but remained silent. The trial court viewed Orecchio's testimony as admissible in corroboration of Merton within the rule which, in some circumstances, admits proof of silence as an admission against interest. State v. Kane, 9 N.J. Super. 254 (App. Div. 1950), and cases there cited. We disagree. Silence alone in any circumstance is a weak reed upon which to support the inference of an admission, and proof of silence, even when properly admissible, is received with caution; there are many legitimate explanations for silence. Accordingly, the competency of proof of silence is limited to silence under circumstances in which the statement not challenged by the person who remains silent is a statement which injuriously affects the rights of the person, and for that reason, is one calling for a reply, and which he will naturally deny, if he does not intend to admit it. State v. DePaola, 5 N.J. 1, at 15, 16 (1950).
We fail to see in what respect Merton's iteration of Bulach's alleged statement in Bulach's presence almost four months before Bulach's appearance before the grand jury implied anything injuriously affecting Bulach's rights that called for a disavowal from him. He was not at that time charged with any crime nor did Merton's iteration imply any accusation of criminal conduct, cf. State v. Kane, supra, or any other matter adverse to his interests. The trial court was required to determine the competency of Orecchio's testimony *115 in light of Bulach's circumstances at the time of Merton's iteration, Donnelly v. State, 26 N.J.L. 601 (E. & A. 1857), and clearly the circumstances were not such that a contradiction of Merton by Bulach was to be expected, and thus his silence could not be evidential against him. Accordingly, Orecchio's testimony was incompetent and it was error to submit it to the jury.
We have not overlooked the fact that much of the testimony of Dr. Duffy and Orecchio was received without objection by the defendant. However, we are privileged under Rule 1:2-19 (a), as amended, to notice plain errors affecting substantial rights of the defendant although they were not brought to the attention of the trial court.
Since we have concluded the motion for acquittal should have been granted on fundamental grounds, we do not find it necessary to discuss the other points of error argued in defendant's brief.
Reversed.