STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. MARCONI CAPORALE, DEFENDANT-APPELLANT.

Argued October 25, 1954—Decided November 8, 1954.

*Mr. B. Franklyn Boggia* argued the cause for appellant (*Mr. Joseph H. Gaudielle,* attorney).

*Mr. Ralph L. Fusco,* Deputy Attorney-General, argued the cause for the State (*Mr. Guy W. Calissi,* Bergen County Prosecutor, attorney).

The opinion of the court was delivered by

WACHENFELD, J. The defendant, a member of the bar of New Jersey, was convicted of the crime of subornation of perjury in the Bergen County Court.

The indictment, *inter alia,* charged that he, on the 13th of June 1951, procured Victor Nicoletta to commit corrupt and willful perjury before the Bergen County grand jury in its investigation concerning violation of gambling laws in said county and unlawfully persuaded Nicoletta, upon his being called as a witness, to depose falsely under oath in a matter material to the issue then being considered by the grand jury, that he, Nicoletta, had on his own behalf, on or about March 15, 1951 and other dates, at Fairview, New Jersey, kept and operated a slot machine used in gambling for money prizes and that one Albert Capuzzi had no part in the keeping or operation of such gambling device, whereas in fact the defendant Caporale well knew that said Capuzzi participated with Nicoletta in the operation of said machine and the sharing of the receipts of said machine, whereby he suborned willful and corrupt perjury in violation of *R. S.* 2:157–1, now *N. J. S. 2A*:131–1.

A synopsis of the evidence presented by the State reveals that Nicoletta testified Capuzzi was involved with him in the maintenance and operation of the machine and that from 1949

to the date of his arrest they weekly had split between them the loss on the pay-offs and the profits on the collection of moneys by the machine. He admitted he lied to the grand jury in testifying before it that Capuzzi had no part in the pay-offs, whereas in fact Capuzzi and he had split the losses and the collections.

He was suborned, he testified, on June 13, 1951 to commit such perjury by the defendant Caporale, who was fully cognizant of the true facts disclosed to him by Nicoletta. The defendant urged Nicoletta to assume full responsibility for the operation, maintenance and use of the machine for gambling purposes and to involve no one else, assuring him there was no need to worry about committing perjury in this respect as they "would take care of everything."

The State's second witness was Victoria Nicoletta, wife of Victor, who corroborated the testimony given by her husband that Capuzzi received his split on the receipts from the joint operation of the machine. She worked in the restaurant premises, had opportunity to observe the transactions between her husband and Capuzzi, and once or twice personally negotiated the split of the profits with the latter.

There was an exhibit, S-2, indicating a record of pay-offs. This memorandum, it was testified, was kept by the Nicolettas so that it could be shown to Capuzzi at the time of the settling of their financial transactions.

After judgment and the imposition of sentence, the defendant appealed to the Appellate Division and we certified the cause here on our own motion.

Two points are raised on appeal: first, it was error for the court to deny the defendant's motion for a judgment of acquittal at the end of the State's case because the purported corroborative evidence as to the commission of the perjury was legally insufficient, and, secondly, the verdict was contrary to the weight of the evidence.

The first point, in addition to the ground already stated, is premised upon the further underlying contention that Mrs. Nicoletta's testimony is so vague, ambiguous and indefinite as not to meet the standards and requirements of

the corroboration rule, plus the fact that the common law concept of unity of husband and wife excludes her evidence as corroboration required by law, on the theory that it is not proof emanating from an independent source distinct and separate from the evidence furnished by the alleged perjuror.

The requirement of corroborative evidence was discussed at length by Justice Brennan in *State v. Bulach*, 10 *N. J. Super.* 107, 110–111 (*App. Div.* 1950), wherein he said:

"The requirement in perjury cases of corroborative evidence of the testimony of a single witness, an exception to the rule that one witness' testimony suffices in most cases, has been criticized by text writers and some courts. VII *Wigmore on Evidence* (3*rd ed.* 1940), *sections* 2040, 2041; *Annotation*, 111 *A. L. R.* 825. However, the requirement is firmly embedded in our law. *State v. Taylor*, [5 *N. J.* 474] (1950); *Zabriskie v. State*, 43 *N. J. L.* 640, at [*page*] 647 (*E. & A.* 1881); *State v. Lupton*, 102 *N. J. L.* 530 (*Sup. Ct.* 1926); *State v. Ellison*, 114 *N. J. L.* 237 (*Sup. Ct.* 1935). This does not mean that the testimony of two witnesses is required; the testimony of one witness plus proofs corroborating his evidence suffices. The two witness rule obtaining in some states probably was not followed at any time in New Jersey, *Zabriskie v. State*, *supra.*
  *  *  *  In this State we have adopted the test that the oath of a single witness must be supported by 'proof of *strong* corroborating circumstances of such character as clearly to turn the scale and overcome the oath of the defendant and the legal presumption of his innocence,' 'something more than the mere weight of evidence in favor of the state,' *Zabriskie v. State*, *supra*, 43 *N. J. L.* at *page* 647; *State v. Carlone*, 109 *N. J. L.* 208, at [page] 211 (*Sup. Ct.* 1932); see also *State v. Lupton*, *supra*, 102 *N. J. L.* at *page* 535; 2 *Wharton's Criminal Evidence* (11*th ed.*, 1935), *sec.* 913."

The court there also held, on the defendant's motion for acquittal at the end of the State's case, it was a question for the court in the first instance whether the corroborative evidence offered to support the State's testimony was legally sufficient, relying on *State v. Lupton, supra*, and *Gordon v. State*, 48 *N. J. L.* 611 (*E. & A.* 1886).

The prosecution accepts the principle as enunciated in *State v. Bulach, supra*, but says much of what is stated regarding "proof of strong corroborating circumstances" applies only where there is direct proof merely by oath of a single witness as to the falsity of the testimony previously given, while in the case under consideration the testimony

under oath of the second witness as to the pertinent and material issues of falsity supplied the required corroboration.

This position is amply supported by the authorities and is not counter to the governing principle as stated in the *Bulach* case, *supra*. In saying that the "two witness rule obtaining in some states probably was not followed at any time in New Jersey," the court correctly enunciated the proposition that we do not in this State require the direct testimony of two witnesses in a charge of perjury to sustain a conviction. The oath of a single witness, supported by proof of strong, corroborating circumstances, is sufficient. This by no means rules out the supplying of the necessary corroboration by the direct testimony of one·or more additional witnesses when such evidence is available.

Evidence is corroborative when, in conjunction with other proof, it tends to establish the material facts in issue. Compare *State v. Ellison, supra,* with *State v. Taylor, supra.*

The attack on Mrs. Nicoletta's testimony as being too vague, ambiguous and indefinite to be corroborative within the meaning of this rule is predicated on the contention that it failed to tie Capuzzi in with any illegal gambling operation. The defendant argues that her recountal of Capuzzi's visits to the restaurant is entirely consistent with his being merely an agent of the owner for servicing and repair, and collection of the owner's half of the weekly receipts of a machine operated only for sport or amusement without pay-offs in money or other prizes.

The argument is based on a question put to her and her answer:

"Q. What do you mean when you say he came for collections? Will you describe that, please?
A. Well, when they came for collections, whatever was in the machine was split fifty-fifty."

This, it is urged, necessarily implies "there could be no sharing in the pay-offs with Capuzzi if whatever money was in the machine was split fifty-fifty" and fails to prove "independent and material facts and circumstances tending di-

rectly to show that Capuzzi was directly involved in the gambling operations of the machine by assuming one-half of the loss caused by the pay-offs."

It is further asserted the use by the witness of the phrase "when they came for collections" creates ambiguity as to whether Capuzzi or some other person was involved on the occasions, if any, when pay-off losses were deducted from the machine's earnings.

An examination of the transcript of this part of Mrs. Nicoletta's testimony quickly dispels any doubt that might arise on either point. The entire portion of the testimony leading up to the quoted question and answer relates to her contact with one Al Capuzzi, referred to by name or the pronoun "he," and the interchange immediately following was:

"Q. What happened to the payoffs? A. The payoffs were also split half and half.

Q. Did you ever straighten out with him on Thursdays at any time? A. Did I?

Q. Yes. A. Once or twice.

Q. On the other occasions who did the accounting with him? A. My husband.

Q. Did you know how to get in touch with Al if you needed him? A. Yes, there was a card, a business card, with a telephone number on it."

The source of Mrs. Nicoletta's testimony was based on her knowledge acquired by close observation and actual participation in the business dealings involved. It was not lacking in quality as to its foundation, and we find no sufficient ground for the contention that it emanated from speculation and conjecture.

Nor are we in accord with the assertion that it was vague, ambiguous and indefinite and failed to meet the accepted standards and requirements of the corroborative rule. A close study of the record brings us to a contrary conclusion.

Citing the ancient common law maxim that husband and wife are one and that one is the husband, the defendant asks whether it can be said "that the legal requirement of the corroborative rule can be satisfied by Mrs. Nicoletta's testimony who at law with her husband constitute one person with

one will when the rule explicitly is that the corroborative testimony shall be by proof from an independent source, distinct and separate from the proof furnished by the alleged perjuror."

The question of the common law rule as to the qualification of a husband or wife to testify in an action in which the other spouse was an interested party and the statutory modifications of that rule were discussed at length in *Foley v. Loughran,* 60 *N. J. L.* 464 (*E. & A.* 1897). The court said:

"At common law neither the husband nor wife was admissible as a witness in a civil or criminal action when the other was a party, and this principle applied to all actions at law in representative capacity or otherwise. The husband and wife were said to be identical in interest. *Windham v. Chetwynd,* 1 *Burr.* 414; 1 *Greenl. Evid.,* 334. The main ground of exclusion appeared to be that of public policy in the maintenance of marital confidence and peace. *Best, Evid.* (6th *London ed.*), § 176. Mr. Justice Magie, in *Jackson v. Johnson,* 51 *N. J. L.* 457–459 [22 *Vroom* 457], 459, in view of the statutes of this state, indicated that no other reason than this supposed public policy existed for the exclusion of the wife. It is perhaps needless to inquire the reason for the exclusion of the evidence of the husband and wife where either was a party to the action. With the statutory restrictions, the parties to the action are both competent and compellable as witnesses."

The court went on to discuss the statutory restrictions contained in the "Act concerning witnesses" of 1870 (*L.* 1870, *p.* 59), in which the disqualification of the husband and wife when either was a party to the action was removed and they were made competent and compellable witnesses for or against each other except in criminal actions, proceedings for divorce on account of adultery, bigamy cases except to prove the fact of marriage, actions for or on account of criminal conversation or as to any confidential communications made by one to the other during marriage, and added:

"The revision of 1874 is substantially the act of 1870, its verbiage being only slightly changed, and except as to the restrictions therein contained, in clear and express terms places the husband and wife, so far as actions in which either are parties or interested, on the same plane as other witnesses. The language of the act is general, and the proviso containing the restrictions cannot be made to disqualify any further than its provisions go. The disqualification by

reason of the identity of interest is expressly and entirely removed, and no construction leading to a different result can be permitted against the plain intent of the statute."

Our present statute, *N. J. S.* 2A :81–1, relating to the competency of witnesses, reads:

"Except as otherwise provided by statute, no person shall be excluded as a witness in any action, proceeding or matter of a civil or criminal nature, for any of the following reasons: * * *
d. Marital relationship."

What is "otherwise provided by statute" so far as the marital relationship is concerned is found in *N. J. S.* 2A :81–7:

"No husband or wife in any action for divorce on account of adultery shall be compelled to give evidence for the other, except to prove the fact of marriage.

No husband or wife shall be compelled to give evidence against the other in any criminal action or proceeding except to prove the fact of marriage.

No husband or wife shall be compelled in any action, proceeding or matter to disclose any confidential communication made by one to the other during marriage."

It will be seen that the listed grounds for disqualification of a spouse's testimony are even fewer in our present statute than in the statute under scrutiny in *Foley v. Loughran, supra.* As said there: "the proviso containing the restrictions cannot be made to disqualify any further than its provisions go."

Additionally, judicial decisions have endorsed the testimony of a wife offered in corroboration of that of her husband even though the husband is the alleged perjuror, as in the instant case. In our jurisdiction, the court, in *State v. Magyar,* 96 *N. J. L.* 9 (*Sup. Ct.* 1921), where it was contended there was no corroboration, said:

"* * * As to the second, the assertion that Santo's testimony stood uncorroborated is contrary to the fact, as an examination of the proofs sent up with the writ clearly discloses; particularly the testimony of the wife of the witness, which was amply sufficient for the purpose."

7 *Wigmore on Evidence* (*3rd. ed.* 1940), § 2059, discussing this issue, says:

"So also the testimony of an accomplice's wife, though sometimes held insufficient, may properly be treated, in a given case, as amply confirmative."

■ We conclude that Mrs. Nicoletta was a competent witness in the case *sub judice* and her testimony is entitled to the same corroborative weight as that of any other witness.

Finally, the defendant contends the verdict was contrary to the weight of the evidence and cites certain contradictions in Victor Nicoletta's testimony and conflicts between it and the testimony of other witnesses.

What evidence was most worthy of belief was a matter for the jury to decide. Some of the cited contradictions apparently arose from the perjurious scheme in which Nicoletta was at first engaged, and the jury would have been justified in so concluding and in resolving the conflicts accordingly. ■ Here there was ample evidence to support the verdict of the jury, and it will not be set aside as against the weight of the evidence except where it is clearly the result of mistake, passion, prejudice or partiality. *R. R.* 1:5-1. *State v. Beard,* 16 *N. J.* 50 (1954); *State v. Huff,* 14 *N. J.* 240 (1954); *State v. Peterson,* 10 *N. J.* 155 (1952); *State v. Goodman,* 9 *N. J.* 569 (1952); *State v. Pierce,* 4 *N. J.* 252 (1950); *State v. Cordasco,* 2 *N. J.* 189 (1949); *State v. Cole,* 136 *N. J. L.* 606 (*E. & A.* 1947); *State v. Hauptmann,* 115 *N. J. L.* 412 (*E. & A.* 1935); *State v. Boccadoro,* 105 *N. J. L.* 352 (*E. & A.* 1928). There is no such showing in this case.

The judgment is affirmed.

*For affirmance*—Chief Justice VANDERBILT and Justices HEHER, OLIPHANT, WACHENFELD, BURLING, JACOBS and BRENNAN—7.

*For reversal*—None.