STATE OF NEW JERSEY, PLAINTIFF-APPELLANT AND CROSS-RESPONDENT, v. JOSEPH BORATTO, DEFEND-ANT-RESPONDENT, AND MARTIN SILVERMAN, DE-FENDANT-RESPONDENT AND CROSS-APPELLANT.

Argued September 26, 1978—Decided June 28, 1979.

508

510

*Mr. Albert G. Fredericks,* Deputy Attorney General, argued the cause for appellant (*Mr. John J. Degnan,* Attorney General of New Jersey, attorney; *Mr. Philip B. Whitcomb,* Deputy Attorney General, of counsel and on the brief).

*Mr. Jack L. Cohen* argued the cause for cross-appellant (*Messrs. Greenberg, Margolis* and *Ziegler,* attorneys; *Mr. Stephen N. Dratch,* on the brief).

*Mr. Richard Newman* argued the cause for respondent (*Messrs. Isles, Newman* and *Weissbard,* attorneys).

The opinion of the court was delivered by

HANDLER, J. Defendants Joseph Boratto and Martin Silverman, attorneys practicing together as law partners, were indicted by a Bergen County Grand Jury for several crimes arising out of the probate of a will, the issuance of letters testamentary and the administration of the estate of a decedent, one Michael G. DePhillips. Boratto was charged in the first count of the indictment with uttering a document falsely purporting to be the last will and testament of the decedent contrary to *N. J. S. A.* 2A:109–1(b) and in the second count for obtaining money by false pretenses from the decedent's estate in violation of *N. J. S. A.* 2A:111–1. Silverman was charged in the third and fourth counts of the indictment with falsely swearing before a special deputy surrogate as to the attestation of the will contrary to *N. J. S. A.* 2A:131–1 and with obtaining money by false pretenses from the decedent's estate violating *N. J. S. A.* 2A:111–1. The defendants were found guilty by a jury of all charges and received State Prison terms and fines. The Appellate Division reversed the convictions in a reported decision, 154 *N. J. Super.* 386 (1977). Thereafter the State filed a petition for certification, which was opposed by Boratto, and

Silverman filed a cross-petition. Both petitions were granted. 77 *N. J.* 475 (1978).

The record discloses that on January 9, 1973 defendants filed for probate with the Bergen County Surrogate what was purported to be the last will and testament of DePhillips, who died on December 10, 1972. The will named Boratto, who was decedent's nephew, as executor and designated June DePhillips, decedent's wife and Boratto's aunt, as the sole beneficiary; it contained an attestation clause in usual form bearing the names of defendants as subscribing witnesses. Allegedly, Silverman swore before the special deputy surrogate that this will had been signed by the decedent in his presence and had been duly attested. Letters testamentary were issued appointing Boratto as executor; he then appointed himself as attorney for the estate.

The authenticity of decedent's will was initially questioned by Carmine Deer, decedent's brother-in-law and Boratto's uncle by marriage. Deer, upon first examining the will in February or March 1973, was disappointed that the entire estate was left to decedent's widow; he expected that decedent would provide for Deer's wife and daughter. His suspicion aroused, Deer visited the office of the Bergen County Prosecutor in early November 1973 and triggered the chain of events culminating in the indictment of defendants.

To substantiate the charges, the State offered at trial the following proofs: the testimony of the deputy surrogate as to the offering of the will for probate by defendants; the testimony of two handwriting experts that the signature on the will was a forgery; Deer's testimony describing his conversations with decedent about providing for Deer's wife and children in the event of Deer's premature death; Boratto's grand jury testimony which implicated Silverman; evidence that the backer on the will was delivered to defendants after October 8, 1972, the date of the will; expert testimony that the fees and commissions taken by defendants were excessive and the testimony of various witnesses concerning bank transactions of Boratto, defendants' law firm and the estate.

Neither Boratto nor Silverman testified at the trial. Defendants relied on the testimony of a handwriting expert; they called as witnesses decedent's brother, sister and widow, each of whom was familiar with decedent's handwriting and testified that the signature on the will was genuine. Defendants also introduced opinion testimony of an attorney as an expert that the fees and commisisons received in connection with the estate were reasonable. In addition, Silverman called another handwriting expert who opined that decedent had signed the will.

The Appellate Division, in reversing the convictions, held that the counts of the indictment charging defendants with obtaining money by false pretenses were deficient, 154 *N. J. Super.* at 397–399, that evidence of reliance was insufficient, *id.* at 395–397, and that the trial judge failed to instruct the jury on this element, *id.* at 394–395. The court further held that while the State satisfied the so-called "two witness" rule concerning the perjury charge, the trial judge failed to explain to the jury the function of this rule, *id.* at 404–406. In addition, the court determined that certain evidence, namely Deer's testimony and that concerning mismanagement of the estate by Boratto and the excessiveness of his fees, was prejudicial and should not have been admitted. *Id.* at 393; 399. The court also ruled that the use of Boratto's grand jury testimony against Silverman was inadmissible hearsay and violated Silverman's right to confront witnesses, *id.* at 400–401, and that the State omitted to prove the identity of Silverman as the individual who undertook to swear to the attestation of the will before the special deputy surrogate or that Silverman had knowledge that it was not decedent who executed the will, *id.* at 401–404. Accordingly, the Appellate Division reversed the judgments of conviction of both defendants for obtaining money under false pretenses as charged by the second and fourth counts of the indictment and entered judgments of acquittal thereon; it reversed the judgments of conviction for the utterance of a false document against Boratto under the first count and per-

jury against Silverman as charged in the third count and remanded these charges to the trial court for a new trial. *Id.* at 406–407. It is our determination that these judgments of the Appellate Division must be altered to the end that Silverman is acquitted of both charges against him and the convictions of Boratto on the charges against him are reversed and the matter remanded for a new trial.

## I

We first address several issues relating to defendant Silverman. He was charged in the third count with perjury in that he swore falsely before the special deputy surrogate contrary to *N. J. S. A.* 2A:131–1 that he had witnessed decedent execute the will offered for probate. The fourth count charged him with obtaining money by false pretenses from the DePhillips estate in violation of *N. J. S. A.* 2A:111–1. The Appellate Division ruled that it was reversible error for the State to have introduced Boratto's grand jury testimony against Silverman. We agree. That evidence, in our judgment, fatally poisoned the State's entire case against Silverman on both counts and mandates a reversal of the convictions.

Boratto's testimony before the grand jury contains no less than five direct inculpatory references to Silverman: it identifies Silverman as a law partner of Boratto; it recites that Silverman shared profits and losses in the firm, including fees received from the DePhillips' estate; that Silverman's signature appeared as that of a subscribing witness on the will; and, that Silverman accompanied Boratto to the surrogate's office and executed the affidavit which formed the basis of the perjury count. Boratto's grand jury testimony was not only directly inculpatory of Silverman, it indirectly, but as clearly, incriminated Silverman by its repeated references to Boratto and his law partner, Silverman, in the plural form in discussing defendants' dealings with the decedent and estate.

This use of Boratto's grand jury testimony against his codefendant Silverman was, as properly found by the Appellate Division, an impermissible use of hearsay evidence and a violation of Silverman's constitutional right to confront witnesses against him. 154 *N. J. Super.* at 400. An extrajudicial confession is never admissible in a joint trial unless all aspects implicating a defendant other than the declarant can be effectively excised and withheld from the jury. *Bruton v. United States,* 391 *U. S.* 123, 88 *S. Ct.* 1620, 20 *L. Ed.* 2d 476 (1968); *State v. Gardner,* 54 *N. J.* 37 (1969); *State v. Barnett,* 53 *N. J.* 559 (1969); *State v. Young,* 46 *N. J.* 152 (1965). There was simply no deletion of those portions of Boratto's grand jury testimony inculpating Silverman. Indeed, not only was there no attempt to purge Boratto's grand jury testimony of its incriminatory content as against Silverman, there was express reliance upon it by the State as prosecutor, the court, and the jury as fact-finder. The jury interrupted its deliberations to request that Boratto's grand jury testimony be reread; this request was accommodated by the court. Moreover, in denying Silverman's motion for a judgment of acquittal on the perjury count, the trial judge relied specifically on Boratto's inculpatory grand jury statement that "[h]e [decedent] signed [the will] and I signed it and my partner, [Silverman] signed it".

The error of the trial court in permitting the use of Boratto's grand jury testimony against Silverman was reversible. The introduction of the evidence was clearly capable of leading the jury to a result it otherwise might not have reached. See *State v. Simon,* 79 *N. J.* 191, 208 (1979); *State v. Stefanelli,* 78 *N. J.* 418, 435 (1979); *State v. Melvin,* 65 *N. J.* 1, 18–19 (1974); *State v. Macon,* 57 *N. J.* 325 (1971). Such error is, thus, not harmless beyond a reasonable doubt. *Brown v. United States,* 411 *U. S.* 223, 93 *S. Ct.* 1565, 36 *L. Ed.* 2d 208 (1973); *Harrington v. California,* 395 *U. S.* 250, 89 *S. Ct.* 1726, 23 *L. Ed.* 2d 284 (1969); *Chapman v.*

*California,* 386 *U. S.* 18, 87 *S. Ct.* 824, 17 *L. Ed.* 2d 705, reh. den. 386 *U. S.* 987, 87 *S. Ct.* 1283, 18 *L. Ed.* 2d 241 (1967).

In addition to this ground for impugning Silverman's convictions on both counts, the State's proofs with respect to perjury were patently insufficient to sustain that charge. Since, according to the indictment and the State's theory of the prosecution, Silverman's alleged perjury was a factual basis for the charge of obtaining money by false pretenses, the latter charge falls with the former.

Perjury, under *N. J. S. A.* 2A:131-1, is the "willful and corrupt false swearing or affirming, under an oath lawfully administered in the course of a judicial or *quasi-*judicial proceeding, to some matter material to the issue." *State v. Sullivan,* 24 *N. J.* 18, 26 (1957); see also, *State v. Mullen,* 67 *N. J.* 134 (1975). To establish perjury the State must prove that defendant made an affirmation under oath "in the course of a proceeding," that the statement was false, and that defendant knew that his affirmation was false. Knowledge of falsity in a prosecution for perjury may be inferred from surrounding circumstances. Such an inference may be derived from several sources, the objective falsity itself, a motive to lie, or facts tending to show generally that defendant knew that his affirmation was false. See *United States v. Sweig,* 441 *F.* 2d 114 (2 Cir.), *cert.* den. 403 *U. S.* 932, 91 *S. Ct.* 2256, 29 *L. Ed.* 2d 711 (1971).

Objective falsity as proof of knowledge arises when actual falsity is established and defendant's awareness of it is inescapable and self-evident. *State v. Haines,* 18 *N. J.* 550 (1955); *State v. Harris,* 132 *N. J. L.* 54 (Sup. Ct. 1944), aff'd 132 *N. J. L.* 343 (E. & A. 1945); see also, *State v. Fuchs,* 60 *N. J.* 564 (1972); *State v. Borrell,* 18 *N. J.* 16 (1955). That doctrine, however, is not available in this case. As the court below observed with respect to Silverman's alleged affirmation that it was the decedent, DePhillips, who had signed the will, "there is nothing in the nature of the untruth here to support a belief that defendant must have known it was untrue." 154 *N. J. Super.* at 402.

Moreover, as pointed out by the court below, the State did not adequately prove that it was Silverman who executed the affidavit and not another individual using his name. No handwriting expert testified that the signature on the affidavit was that of defendant. The only evidence probative of identification is the testimony of the special deputy surrogate, who, though stating that Silverman executed the affidavit after she read him the oath, did not identify defendant as that individual in court or in any other fashion. See *State v. Draughn,* 121 *N. J. Super.* 64 (App. Div.), aff'd o. b. 61 *N. J.* 515 (1972). Moreover, the State pointedly declined to have this witness make such an identification. We are satisfied under these circumstances that there has been a failure of proof that defendant Silverman himself, not another, committed the perjury charged in the third count of the indictment.

■■ We note a further ground found by the Appellate Division that Silverman's conviction for perjury must be reversed. We disagree with the appeals court determination there was reversible error with respect to the asserted mishandling by the trial judge of the so-called "two witness" rule applicable to perjury prosecutions. 154 *N. J. Super.* at 404–406. Our jurisdiction has never accepted the "two witness" rule. *State v. Bulach,* 10 *N. J. Super.* 107 (App. Div. 1950); *Zabriskie v. State,* 43 *N. J. L.* 640 (E. & A. 1881). Rather, the principle followed here is that where proof of perjury consists of the testimony of a single witness, it is necessary that there be corroborating evidence of the falsity of the matter sworn to by the defendant. *E. g., State v. Caporale,* 16 *N. J.* 373 (1954); *State v. Cattaneo,* 123 *N. J. Super.* 167 (App. Div. 1973); *State v. Bulach, supra; State v. Lupton,* 102 *N. J. L.* 530 (Sup. Ct. 1926). In such a case, the oath of a single witness must be supported by "proof of *strong* corroborating circumstances of such character as clearly to turn the scale and overcome the oath of the defendant and the legal presumption of his innocence." *State v. Caporale, supra,* 16 *N. J.* at 376 (emphasis in original); *State v. Bulach, supra*

10 *N. J. Super.* at 111; *Zabriskie v. State, supra* at 647. It is for the court, in the first instance, to determine whether the corroborating evidence is legally sufficient. *State v. Bulach, supra,* 10 *N. J. Super.* at 111; *State v. Lupton, supra,* 102 *N. J. L.* at 536; *Gordon v. State,* 48 *N. J. L.* 611 (E. & A. 1886). In such a case, where only a single witness has testified to the falsity in a perjury prosecution, the better practice is to instruct the jury as to the requirement of corroboration for a conviction. See *State v. Bulach, supra;* 7 *Wigmore, Evidence* § 2042, pp. 365–367 (Chadbourn rev. 1978).

In this case, however, there were several witnesses, both expert and lay persons, who testified as to the falsity of the matter with respect to which Silverman allegedly swore. There was corroborating evidence as well. No special instruction with respect to the evidence of perjury was called for in these circumstances. The jury was instructed that it must conclude beyond any reasonable doubt that perjury occurred in order to return a guilty verdict on that charge. Hence, the trial judge's general instructions to the jury as to assessing the credibility of witnesses, criticized by the court below because it was coupled with a failure to charge the "two witness" rule, did not constitute error. See *State v. Cattaneo, supra.*

We conclude therefore that Silverman is entitled to a reversal of his convictions for perjury and false pretenses. These reversals, based upon evidential insufficiency, serve to bar a retrial on grounds of double jeopardy. *Burks v. United States,* 437 *U. S.* 1, 98 *S. Ct.* 2141, 57 *L. Ed.* 2d 1 (1978); *Greene v. Massey,* 437 *U. S.* 19, 98 *S. Ct.* 2151, 57 *L. Ed.* 2d 15 (1978); *State v. Lynch,* 79 *N. J.* 327 (1979); *cf. State v. Tropea,* 78 *N. J.* 309 (1978). Accordingly, Silverman stands acquitted of all charges.

## II

We turn to the case against Boratto. He, with Silverman, was charged with the crime of obtaining money by false pre-

tenses contrary to *N. J. S. A.* 2A:111–1. Under the statute "[a]ny person who, knowingly or designedly, with intent to cheat or defraud any other person, obtains any money, property, security, gain, benefit, advantage or other thing of value by means of false promises, statements, representations, tokens, writings or pretenses, is guilty of a misdemeanor." The Appellate Division, to repeat, reversed the conviction on this count and entered a judgment of acquittal. While we agree that the conviction ought to be reversed, we have concluded that there should be a new trial on this charge.

Although the issue was not specifically raised before it, the Appellate Division undertook to rule that the counts of the indictment for obtaining money by false pretenses were insufficient. The vice of the second count, according to the court below, was that it failed to specify to whom the representation "that he [Boratto] was executor of the estate of the deceased Michael G. DePhillips" was made or that anyone relied upon the representation in the belief that it was true, 154 *N. J. Super.* 397, and also that it failed to charge that there was any reliance upon the representation allegedly made to the special deputy surrogate that the will "uttered for probate was the true will of Michael G. DePhillips." *Id.* at 397–398.

It is true, as the lower court observed, that in false pretense cases clarity of expression is extremely important. *State v. Lamoreaux,* 29 *N. J. Super.* 204, 207 (App. Div.), aff'd 16 *N. J.* 167 (1954). Nevertheless, the lodestar of determining the sufficiency of an indictment is whether it gives a "defendant notice of what he must prepare to defend." *Id.; State v. Borrell, supra; State v. Lefante,* 12 *N. J.* 505, 509–511 (1953) ; *State v. Spano,* 128 *N. J. Super.* 90, 92 (App. Div. 1973), aff'd 64 *N. J.* 566 (1974) ; *State v. John P. Callaghan Co.,* 70 *N. J. Super.* 585 (Law Div. 1961) ; *United States v. Radowitz,* 507 *F.* 2d 109 (3 Cir. 1974). The test of the adequacy of an indictment is whether the document in reasonably understandable language communicates to the defendant the essential factual ingredients of the offense. *State*

*v. Silverstein,* 41 *N. J.* 203, 207 (1963); *State v. Low,* 18 *N. J.* 179 (1955); *State v. Malone,* 13 *N. J. Super.* 510 (Law Div.), aff'd 16 *N. J. Super.* 383 (App. Div. 1951). In addition, specificity in an indictment is required in order to avoid a prosecution which puts a defendant twice in jeopardy and to preclude the substitution by a trial jury of an offense which the grand jury did not in fact consider or charge. *State v. LaFera,* 35 *N. J.* 75, 81 (1961); *State v. Spano, supra,* 128 *N. J. Super.* at 92.

The court below concluded that the State's theory of the crime, reflected both in the indictment and its proofs, was flawed because it appeared to be the "estate" of the decedent to which defendants' false representations were made and that it was the "estate" which relied upon these representations in paying moneys as legal fees to defendants. The court reasoned that "an 'estate,' consisting only of the assets and liabilities of decedent, being neither a natural or [sic] an artificial person, 33 *C. J. S. Executors and Administrators* § 3e; *Behnke v. Geib,* 169 *F. Supp.* 647, 650 (D. C. Md. 1959); *Tanner v. Best's Estate,* 40 *Cal. App.* 2d 442, 104 *P.* 2d 1084, 1086 (D. Ct. App. 1940), is [not] competent to achieve a condition of the mind such as 'reliance' [which could occur] only through its fiduciary representative. Since Boratto occupied that position he could not have acted in innocent reliance upon a misrepresentation which he had himself knowingly made." 154 *N. J. Super.* at 396. The court consequently found the indictment and proofs fatally defective in their presentation of the crucial elements of misrepresentation and reliance.

This conception of the State's case stems from a tendentious and stilted reading of the indictment as well as a strained perception of the evidence. We do not agree with the lower court that the indictment is to be understood as implying that misrepresentations were made solely to a theoretical construct, the estate, and that it was only the estate which relied upon the misrepresentations. The second count alleges in distinct and unambiguous language that one

of Boratto's false pretenses was his knowing misrepresentation to the special deputy surrogate that the will which he was offering for probate was true. It also discloses unmistakably that another false pretense made by Boratto consisted of his representation that he had been designated by the decedent in that will as the executor of the estate. It is obvious that this latter misrepresentation was also made to the special deputy surrogate. It is just as clear that the special deputy surrogate necessarily relied on both of these misrepresentations, since she accepted and admitted the will to probate as a true will and she issued letters testamentary to Boratto in the belief that he was the person named by the decedent in the will as executor.

■ To the extent it might be thought that the particular misrepresentation, that Boratto was the executor named in the will, was in some way made to the "estate" or its beneficiary, in addition to the special deputy surrogate, such an allegation in the indictment, if not surplusage, clearly was not an essential element in spelling out the crime of false pretenses. The notion of reliance by the estate upon a misrepresentation, which, we stress, is not stated in the indictment, conveys the message as a matter of common sense that it was the estate — actually its beneficiary — which was the ultimate victim of defendant's false pretenses or, to put it more accurately, the vehicle through which he wrongfully obtained moneys. This does not detract from the adequacy of the charge of criminality. A false representation as an element of the crime of false pretenses need not be directed or communicated to the intended victim or entail his reliance upon it. *Commonwealth v. Aronson,* 312 *Mass.* 347, 44 *N. E.* 2d 679 (Sup. Jud. Ct. 1942); *People v. Robinson,* 23 *Mich. App.* 672, 179 *N. W.* 2d 239 (Ct. App. 1970). See also, *Valassakis v. State,* 187 *So.* 2d 74 (Fla. Dist. Ct. App. 1966); *R. v. Taylor,* 15 Cox C. C. 268 (Q. B. 1883). Cf. *State v. Zwillman,* 112 *N. J. Super.* 6 (App. Div. 1970), certif. den. 57 *N. J.* 603 (1971). False representations made to and relied upon by an official which result ultimately in a third

person giving up something of value to a defendant may constitute the crime of false pretenses. See, *e. g., State v. Crowley,* 39 *N. J. L.* 264 (Sup. Ct. 1877) ; *Commonwealth v. Mulrey,* 170 *Mass.* 103, 49 *N. E.* 91 (Sup. Ct. 1898) (Holmes, J.) ; *State v. Lynn,* 3 *Pennewill* 316, 51 *A.* 878 (Del. Ct. Gen. Sess. 1901) ; see also, *Johnson v. People,* 110 *Colo.* 283, 133 *P.* 2d 789 (Sup. Ct. 1943). So long as the false pretense was relied upon and became the means by which money or property was obtained, it is not necessary to show that the person deceived was an agent of the party victimized. See *State v. Thatcher,* 35 *N. J. L.* 445 (Sup. Ct. 1872) ; *Clark & Marshall, Crimes* § 12.23 (1967) ; *cf. Metric Investment, Inc. v. Patterson,* 101 *N. J. Super.* 301 (App. Div. 1968) ; *State v. Zwillman, supra.*

The indictment, even if it is read to include the assertion that the estate "relied" upon certain of defendant's false statements, did not in context misstate or distort the essential facts constituting the crime. Though the indictment was inartful in this respect, it was not misleading. We disagree therefore with the court below that the indictment charging the crime of false pretenses was defective or the State's proofs which tracked the indictment were insufficient.

The Appellate Division also concluded that the instruction of the trial court was not sufficient to convey to the jury a proper understanding of the element of reliance in the factual context of the crime charged in this case. Reliance, of course, is an essential element of the offense of obtaining property by false pretenses. See *e. g., State v. Lemken,* 136 *N. J. Super.* 310, 318 (App. Div. 1974) ; *State v. Zwillman, supra.* The court did not clearly charge the jury that it was required to determine beyond a reasonable doubt, in order to convict, that the false representations or pretenses were relied upon by someone, leading ultimately to defendant's obtaining money. *Cf. State v. Zwillman, supra.* While a proper understanding on the part of the jury as to the correct law to be applied might well be gleaned from the court's

entire charge, explicit instructions on the element of reliance would have dispelled any doubt in the matter.

We conclude that the jury's conviction of Boratto on the charge of obtaining money by false pretenses cannot stand. There is to be a remand and a retrial of this count of the indictment. In light of such remand, it would be appropriate for the trial court to amend the indictment to spell out more explicitly the reliance of the special deputy surrogate upon the false representations of Boratto with the ultimate result that he wrongfully obtained money from the estate. *R.* 3:7–4; see *State v. Lemken, supra,* 136 *N. J. Super.* at 323; *State v. John P. Callaghan Co., supra,* 70 *N. J. Super.* at 588–593. Also it is to be anticipated that upon the retrial of this count the instructions to the jury will adequately explain the element of reliance in the context of the evidence adduced.

### III

The Appellate Division in reversing Boratto's conviction for uttering a false document as charged in the first count of the indictment ruled that there should be a new trial on that charge. We concur in that result. Our decision calls for a discussion of several other claims of error, which will be helpful in guiding the trial court in the retrial of both of the charges against Boratto.

The most telling criticism of the trial below with respect to its overall fairness relates to the admission in evidence of the testimony of Carmine Deer. Deer testified that upon learning of the existence of the will, he was suspicious of the will's authenticity, even before he saw decedent's purported signature on it. After the will was probated, Deer requested his attorney to obtain a copy of the will. Upon examining that document, Deer concluded that decedent's signature was not genuine; consequently, he pursued further investigation through the Bergen County Prosecutor's Office. Also, according to Deer decedent had represented that he would take care of Deer's wife and children in the event of Deer's

premature demise. Nevertheless, it is undisputed that Deer and decedent never discussed specifically decedent's will or other provision by decedent for Deer's family.

The Appellate Division ruled that Deer's extensive testimony that Deer's family would be cared for by decedent did not come within the "state of mind" exception to the hearsay rule, *Evid. R.* 63(12), because it was not actually probative of a testamentary intent. We agree with that analysis of the evidence. Statements and conduct of a testator may be admissible if probative of his state of mind in executing his will and disposing of his estate. *In re Estate of Lehner,* 70 *N. J.* 434 (1976). Here, the beneficent statements attributed to decedent by Deer had, at best, an ambiguous nexus to the disposition of his will or estate. At no time, according to Deer, did decedent mention or allude to his testimentary intentions. There was simply an insufficient connection between decedent's general conversations with Deer and decedent's state of mind in disposing of his estate. Compare *In re Spiegelglass,* 48 *N. J. Super.* 265 (App. Div. 1958); *Woll v. Dugas,* 104 *N. J. Super.* 586 (Ch. Div. 1969) (*dictum*).

In assessing the prejudicial impact of this testimony upon the fairness of defendant's trial, it cannot be overstressed that the evidence in the case directed to the forgery of the will was sharply contraverted and hardly overwhelming. Both sides brought forth opposing experts, as well as lay witnesses, on the authenticity of the signature on the will. One cannot conclude that the Deer testimony had no influence in bringing the jury to a result which was not otherwise impelled by overwhelming evidence of guilt. *State v. Simon, supra, State v. Stefanelli, supra; State v. Melvin, supra.* Hence the improper admission of this testimony into evidence constitutes additional grounds for the reversal of the convictions of Boratto on the counts of forgery as well as false pretenses and should, of course, result in its preclusion as evidence in a retrial of these charges.

It is further contended by Boratto that the evidence offered below as to the reasonableness of the fees and commissions taken by defendant, as well as that relating to the alleged mishandling of estate matters, was unduly prejudicial and should have been inadmissible. The State called an attorney who testified at great length as to the reasonableness of attorneys' fees and executors' commissions in probate proceedings. He referred to the statutory, as well as voluntary, basis for executor's commissions and the factors to be taken into account in determining a reasonable attorney's fees, including the size and nature of the estate, the identity of the executor, the amount of work involved, unusual aspects of the work and the expertise of the attorney. Other witnesses also testified to these matters as well as numerous financial transactions involving the bank accounts of the estate, defendants' law firm and Boratto to show a motive on the part of defendants for drawing off excessive fees from the estate.

The Appellate Division held that, under *Evid. R.* 4, the probative value of the evidence concerning the mismanagement of the affairs of decedent's estate and the receipt of unreasonably large fees and commissions was outweighed by its prejudicial impact. Those proofs, concerning "highly technical data * * * might have suggested to the jury the flavor of rampant criminality in respects other than those for which he was on trial." 154 *N. J. Super.* at 399. It was the conclusion of the appeals court that, although the disputed evidence tended to prove motive, *i. e.*, that defendants were moved by the prospect of commissions and fees that would compensate for overdrafts in the law firm's and Boratto's personal bank accounts "* * * it would have been enough merely to demonstrate that these substantial payments were actually made." 154 *N. J. Super.* at 399.

There is much to commend the views of the appellate court on this issue. We cannot, however, agree that the evidence so adduced with respect to this facet of the criminal prosecution constituted a mistaken exercise of the trial court's discretion requiring a reversal of the conviction. The proof

of Boratto's handling of the estate, including the receipt of unreasonably large funds at times contrary to normal practice and when his personal or firm's bank accounts were overdrawn, was probative of his financial motive for the fraudulent plot. That motive bears a logical relationship to the commission of the criminal scheme. See, *e. g., United States v. Pichnarcik,* 427 *F.* 2d 1290 (9 Cir. 1970) ; *Lyda v. United States,* 321 *F.* 2d 788, 790 (9 Cir. 1963) ; compare *State v. Orecchio,* 16 *N. J.* 125 (1954). Cf. *United States v. Waller,* 468 *F.* 2d 327 (5 Cir. 1972), *cert.* den. 410 *U. S.* 927, 93 *S. Ct.* 1358, 35 *L. Ed.* 2d 588 (1973).

Plainly, the disputed evidence had a prejudicial aura over and above its direct relevance to the guilt of the accused for forgery and false pretenses; it contained instances of misconduct by defendant other than that for which he was on trial. But, just as obviously, these proofs tended to establish an important part of the State's case, financial motive for the fraudulent scheme. The trial judge perceived this tension, weighed the competing considerations, exercised his discretion in determining to admit the evidence and defensed the possibility of untoward prejudice by giving the jury a limiting instruction that the reasonableness of defendants' fees was not an issue in the case and that it could be considered only in connection with defendants' motive. Further, he kept the jury's inquiry in proper perspective by emphasizing that the central, factual issue to be resolved was whether the will was forged. We therefore conclude, on this particular issue, that there was no mistaken exercise of discretion by the trial judge requiring a reversal of the convictions. We see fit to add, however, that on the retrial of the charges this determination should not be taken to occlude a different or contrary discretionary ruling by the trial court in the context of a new trial should this or similar evidence be proffered.

## IV

For the reasons given, the judgments of conviction of defendant Silverman are reversed and judgments of acquittal

ordered. The judgments of conviction of defendant Boratto are reversed and a new trial on both charges ordered. The judgments of the Appellate Division are accordingly in part affirmed, in part reversed, and in part modified.

SULLIVAN, J. (concurring in part and dissenting in part). I am in accord with so much of the majority opinion as reverses the judgments of conviction of defendant Boratto and orders a new trial for him on both charges. However, while I also agree that incompetent and highly prejudicial evidence was admitted against defendant Silverman, I must dissent from the majority holding that not only must his conviction be set aside but that judgments of acquittal should be entered in his favor.

The basic issue at trial was whether Michael G. DePhillips actually executed his purported last will and testament, later admitted to probate. Boratto and Silverman were law partners and had signed the will as attesting witnesses. (DePhillips was Boratto's uncle.) After DePhillips' death, Silverman appeared in the surrogate's office on the probate of the will and made an affidavit that the will had been executed in accordance with *N. J. S. A.* 3A:3-2 and that he saw the decedent DePhillips sign the will. The charge of perjury against Silverman is based on this affidavit.

In ordering Silverman's acquittal, the majority reasoned that even though there was evidence that the DePhillips signature on the will was a forgery, there was no proof that Silverman knew that the person signing was not Mr. DePhillips. The majority also held that there was a lack of proof that Silverman, the defendant on trial, had executed the affidavit in the surrogate's office and not another individual using his name. I disagree, and would not allow defendant, a member of the bar of this State, to have an acquittal as a matter of law on what I consider to be such fragile and tenuous grounds.

The special deputy surrogate who appeared as a State's witness testified that, on the probate of the DePhillips will,

"Martin E. Silverman" appeared before her as a witness to prove the will and executed an affidavit that the requirements of *N. J. S. A.* 3A:3–2 had been met and that he saw the decedent DePhillips sign the will. A jury could reasonably infer that she was referring to defendant Martin E. Silverman then present in court defending against a charge of perjury arising out of the execution of the very affidavit in question.

It was undisputed that defendant Silverman was a member of the bar of this State and a former law partner of his co-defendant Boratto. Boratto and Silverman had signed the DePhillips will as attesting witnesses. Indeed, the backer of that law firm was attached to the will when it was offered for probate. The "Martin E. Silverman" who executed the affidavit in the surrogate's office swore that he was one of the two witnesses to the DePhillips will. The matter of identity, therefore, was sufficiently established by the State.

As to proof of Silverman's knowledge of the alleged falsity, there was expert evidence that the DePhillips signature on the will was a forgery. As noted, Silverman swore in the affidavit filed on the probate of the will that he had seen the decedent DePhillips sign the will. Based on the foregoing, the jury had an adequate basis for finding Silverman guilty of having executed a false affidavit, if it found the DePhillips signature to be a forgery.

I agree with the majority that the "two-witness" rule is not the law of this State, and that perjury can be established by the testimony of one witness if supported by strong corroborating circumstances. Instead of acquittal, I would order that Silverman be retried on both charges.

*For reversal and acquittal as to Silverman and reversal and remandment as to Boratto*—Chief Justice HUGHES and Justices MOUNTAIN, PASHMAN, CLIFFORD, SCHREIBER and HANDLER—6.

*For reversal and remandment as to both defendants*—Justice SULLIVAN—1.