237 N.J. Super. 428 (1989)
568 A.2d 111
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
FREDDIE ALLAN RIOS OLIVO, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted November 14, 1989.
Decided December 22, 1989.
*429 Before Judges ANTELL, BILDER and STEIN.
Alfred A. Slocum, Public Defender, attorney for appellant (Nicholas Celso, III, of Schwartz, Pisano, Simon, Edelstein & Ben-Asher, designated counsel and on the brief).
Ronald S. Fava, Passaic County Prosecutor, attorney for respondent (Steven E. Braun, Senior Assistant Prosecutor, of counsel and on the letter-brief).
The opinion of the court was delivered by ANTELL, P.J.A.D.
Defendant was charged in a multiple-count indictment with kidnapping, N.J.S.A. 2C:13-1(b)(1), aggravated sexual assault, N.J.S.A. 2C:14-2a(4), sexual assault with physical force, N.J.S.A. 2C:14-2c(1), and sexual assault upon a mentally defective *430 person, N.J.S.A. 2C:14-2c(2). He was acquitted of the first three charges and convicted of the fourth.
The count of the indictment under which defendant was convicted charged that he had performed vaginal intercourse upon M.R., "when he knew or should have known that [M.R.] was ... mentally defective." Defendant challenges his conviction on the ground that the trial court erred in denying his motion for a judgment of acquittal. He asserts that the evidence fails to support the conclusion that he knew or should have known that M.R. was mentally defective.
In its previous form N.J.S.A. 2C:14-1h defined the phrase "mentally defective" to mean a mental condition which rendered one incapable of "appraising" the nature of his or her conduct. By L. 1983, c. 249, 1103, the legislature substituted the word "understanding" for "appraising." According to CANNEL, CRIMINAL CODE ANNOTATED, Comment N.J.S. 2C:14-1h,
[t]he concern was that without this change the addition to 2C:14-2c(2) of a provision criminalizing sexual contact with mentally defective persons, made by the same statute, might have been construed to include even mildly retarded persons and therefore criminalize consensual sexual activity involving such persons. Senate Committee Statement to A-1844 (1983). The definition now makes it clear that persons are mentally defective within the meaning of this chapter only if incapable of understanding the nature of their conduct, i.e., that they are engaged in sexual activity. Previously they were included if unable to appraise that conduct, i.e., as being either morally right or wrong. [emphasis in original].
Whether cast in terms of "appraising" or "understanding," the definition of "mentally defective" does not lend itself to easy application. The difficulty lies with ascertaining what is meant by the "nature" of the victim's conduct. We conclude that the term is used in the statute in its broad meaning as referring to "the essential character or constitution of something." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY OF THE ENGLISH LANGUAGE UNABRIDGED 1507 (G. & C. Merriam Company 1971). So understood, it involves an inquiry into whether or not the complainant could *431 appreciate the inviolability of her person and that others could not, without her consent, invade her person for carnal gratification. This was discussed in Commentary to the New Jersey Penal Code, Final Report of the New Jersey Criminal Law Revision Commission, 194-195 (October, 1971) in the following way:
The difficult problem is to define the degree of mental deficiency or impairment which shall bring the statute into play. The Code limits criminality to situations of known mental disease or defect so serious as to render the woman "incapable of appraising the nature of her own conduct." Conditions affecting only the woman's capacity to "control" herself sexually will not involve criminal liability. Also, by specifying that the woman must lack capacity to appraise "the nature" of her conduct, we make it clear that we are not talking about appraisals involving value judgments or consideration of remote consequences of the immediate acts. The typical case that remains within the revised clause would be the case of intercourse with a woman known to the defendant to be manifestly and seriously deranged. (MPC P.O.D., p. 144 (1962)). [emphasis supplied].
We conclude from the foregoing that success of a prosecution under N.J.S.A. 2C:14-2c(2) depends upon proof of direct or circumstantial facts, unique to each case, which show that the complainant was mentally defective and either that defendant's actual knowledge of the complainant's mental defect or that the disability was so conspicuous that it could not be overlooked. In holding a defendant accountable for what he "knew or should have known," N.J.S.A. 2C:14-2c(2) expects him to know what is evident to a person of ordinary perception, learning, insight and sensitivity. With these standards, we turn to the relevant and material evidence to determine whether it supports a judgment that M.R. was mentally defective as defined by statute and, if so, whether this was something of which defendant knew or should have known.
At the time of the alleged offense M.R. was 16 years old. She was classified as educable mentally retarded and attended a special education class in Passaic High School. According to her mother and her aunt, with whom she has a close relationship, M.R. "forgets everything," and is "slow." She assists her *432 mother in keeping up the home by sweeping the floors and washing dishes.
M.R. was examined by two school psychologists. The substance of their testimony was that M.R. has a verbal I.Q. of 60 and a performance I.Q. of 65. They found her to be "moderately retarded," describing her as "very naive and socially inept. She didn't seem to do very much without supervision; seemed rather passive; never worked; never baby sat." When she was specifically asked on direct examination whether she had an opinion "as to whether or not ... [M.R.] is unable to understand the nature of her conduct" one psychologist gave the following answer:
I believe she's mentally defective and unable to understand the ripple effects or the consequences of her behavior.
The foregoing fairly recapitulates the testimony relating to M.R.'s mental deficit. That deficit is an essential element of the offense and the test to be applied is whether,
viewing the State's evidence in its entirety, be that evidence direct or circumstantial, and giving the State the benefit of all its favorable testimony as well as all of the favorable inferences which reasonably could be drawn therefrom, a reasonable jury could find guilt of the charge beyond a reasonable doubt. [State v. Reyes, 50 N.J. 454, 459 (1967)] [citations omitted].
Although there can be no question as to M.R.'s intellectual disability, the proofs do not support a conclusion that it prevented her from understanding the nature of her encounter with defendant. What emerges, certainly, is the picture of a slow-thinking, poorly-functioning individual, but not one without the capacity to understand that she had a right to refuse defendant her favors and that defendant was using her to gratify his own sexual desires. The State's own testimony even suggests the contrary. For example, according to M.R.'s aunt, M.R. told her that "he rape her." This statement alone implies a grasp of the distinction between permissible and impermissible sex and that her body was wrongfully used by defendant. Moreover, she testified in her own concrete vernacular as to how the sexual organs were joined during intercourse.
*433 We have considered carefully the import of the psychologist's direct testimony that M.R. was "unable to understand the ripple effects or the consequences of her behavior." The question to which this responded called for an opinion as to whether M.R. was capable of "understanding the nature of her conduct." The answer did not directly address this question. As the Criminal Law Revision Commission stated in its final report, supra, the concern of the statute is with the victim's ability to understand the "immediate acts" of sexual congress, not their "remote consequences." The foregoing opinion does not describe the condition contemplated by the statute.
We conclude that the State failed to produce evidence that M.R. was mentally defective within the meaning of N.J.S.A. 2C:14-1h. As part of that determination, and independently thereof, we find no evidence that defendant "knew or should have known" that M.R. was mentally defective as required by N.J.S.A. 2C:14-2c(2). See Burks v. United States, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978); State v. Boratto, 80 N.J. 506, 517 (1979).
Reversed.